Argued October 17, 1930; modified March 17; rehearing denied
April 28, 1931

# FRIBERG *v.* ELROD ET AL.

(296 P. 1061)

*Harold V. Newlin,* of Portland, for appellant.

*Jay Bowerman,* of Portland (Bowerman & Kavanaugh, of Portland, on the brief), for respondents.

BEAN, C. J. Section 5 of the contract provides as follows:

"The engineer shall be the sole judge of the sufficiency of the force employed, the suitability and capacity of any plant and the quality of the work done by the contractor or his employees."

Section 5 of the specifications, which are made a part of the contract, provides:

"All corrections of errors or omissions in the specifications or plans may be made by the engineer when such correction is necessary for the proper fulfillment of their intention as construed by him."

Section 11 of the specifications reads as follows:

"All disputes or disagreements between the parties hereto shall be submitted to and decided by the engineer and his decision shall be binding upon both parties."

It also contains the following provision:

"Any reasonable modification of the proposed plans which does not materially add to the cost of the work to the contractor or any work required because of omissions or incomplete plans shall be performed at the prices bid and without extra payment on account of such changes or omissions."

The plaintiff contends that by the express provisions of the contract the engineer's authority was limited and circumscribed to the general supervision of the work. Plaintiff further contends that the partnership failed to comply with their contract by neglecting to supply plaintiff with materials when required and failed to deliver the material on the floor of the dock as provided by the contract, resulting in great delay and expense to the plaintiff; that during the construction the plans and specifications were arbitrarily changed and altered so as to include extensive and costly additions to the work not originally contracted for; that defendants delayed the completion of certain preliminary work, such as the installation of piling and making of certain fills and laying of the dock floor, which delayed plaintiff in the construction of the buildings; that a roadway to the structure was not completed until about the 20th of September, 1927; that certain plans required for the apple storage house were not delivered by the partnership until the 20th of September, 1927, which delayed the construction of the apple storage house; that when the buildings were approximately one-half completed the defendants ordered plaintiff to discontinue the construction under the old plans and specifications, and thereupon new plans and specifications were substituted; that structural iron and roof joists were not delivered when required; that construction was caused to be

discontinued on account of the settling of fills; that certain changes were made in the bulkhead wall during construction, necessitating the reconstruction of forms; that extensive and costly changes were required to be made during the construction of a retaining wall; that defendants' conflicting orders interfered with the construction; that improper and inferior materials were supplied by defendants; that the plans were incomplete, all of which caused delay, great expense and damage to plaintiff.

■ The plaintiff contends that the contract has been materially modified by the parties in so many particulars as to be no longer controlling. We do not so find. Defendants contend the parties are bound by the express terms and conditions of their written contract.

The contract provided that any "supplemental agreements covering such work which may be made from time to time" are made a part of the contract. The contractor commenced the work about the 28th of August, 1927. The contract provided that the first payment should be made September 10, and payments should be made on each Saturday thereafter for the work done up to and including Thursday of the particular week. The estimated cost of the building was $62,000. Mr. Friberg rendered a bill September 17, 1927, for extra work done to that date, and it was paid. The foreman furnished some items of extra work of different dates at different times, but no statement of the cost plus work was rendered until about December 19, when the building was nearly completed. Plaintiff presented a bill claiming cost plus for several items, many of which were rejected by the engineer who, by the terms of the contract, was to pass on such matters, and a claim of lien was filed in which

the price per item was materially reduced. Friberg, in explaining why he presented claims to the partnership and afterwards filed a lien for different amounts, said it was done by his son, and stated: "A party told my son that you were dealing with a horse trader now and you had better make your bills accordingly, and you had better make them about double, so you can settle for half; and my son asked me whether he should do that or not. 'Well,' I says, 'that is poor policy to do it, but,' I says, 'you can try it.' "

On November 18 and November 21, 1927, Elrod and Trimble wrote Friberg that all bills for extras must be presented to Brown, the engineer, not later than Friday night of the week of November 18, and that thereafter all bills for extras must be presented to Brown for approval or rejection within three days of the performance of the work.

One of the main contentions of plaintiff is that the written contract made between the parties is not controlling for the reason that it has been deviated from in so many particulars, and so many changes, alterations and additions thereto were made and acquiesced in by the parties that there was a departure from the original contract.

The plaintiff's lien embraced in this foreclosure suit is based upon the written contract dated August 23, 1927, between plaintiff and Elrod and Trimble. The contract provides for the manner of arriving at the amount to be paid for the work to be performed by plaintiff. The plaintiff now claims that he is entitled to recover for work done which is not mentioned in the contract of the parties, on the quantum meruit. The contract is, for work not coming within the unit price called for in the contract, that plaintiff should be compensated for the cost thereof plus 10 per cent.

Plaintiff's contention that the contract was so changed that the same was abandoned and abrogated, cannot be upheld. Plaintiff cites and quotes from *Hayden v. Astoria,* 74 Or. 525 (145 P. 1072), to sustain such contention. In that case, based upon the allegations of the complaint, this court followed the rule that where the original contract has been deviated from in so many matters that it cannot be regarded as controlling it must be considered as abrogated and the parties relegated to their implied rights, for a subsequent departure from the terms of a written contract by the parties, mutually acquiesced in, abrogates it to that extent. (Citing 4 Elliott, Contracts, § 3697.) The facts in the Hayden case are entirely different from those in the case at bar. Here provision is made in the contract that extra work should be paid for at cost, plus 10 per cent. No such provision was contained in the contract mentioned in the Hayden case. In the present case the contract was not abandoned by the parties. It was adhered to and this suit is based thereon. There is nothing in the Hayden case to indicate that one can make a contract and bring an action thereon and then claim that the contract has been so changed as to have been abrogated and recover upon a quantum meruit. The case of *Hayden v. Astoria* was again before this court, after a trial upon the merits, and was reported in 84 Or. 205 (164 P. 729), the opinion being written by Mr. Justice McCAMANT.

This case was tried before the circuit court upon the theory that plaintiff should recover upon the contract as set forth in the complaint and not that the plaintiff could recover on quantum meruit. In the present case the contract contemplated extra work to be done and provided for the payment therefor. It also provided that the engineer should be the arbi-

trator in case of any dispute in regard to the contract between the parties. After the work was completed and the plaintiff on December 19, 1927, submitted his claim for work performed, W. G. Brown, the engineer, who supervised the work and was the arbitrator mentioned in the contract, made a final estimate of a large part of the work done by plaintiff under the contract, and in twenty-one different items estimated the work to be paid for at $62,016.83.

The estimate of an engineer and arbitrator in such a case may be impeached for fraud; that is, it may be shown that the engineer in charge intentionally underestimated or overestimated the work. It may also be impeached by proof of gross errors in the measurements and calculations. If the evidence shows such errors, it either creates the presumption of fraud or warrants the conclusion that the engineer did not exercise that degree of care, skill and good faith in the discharge of his duty, which the law exacts, and in either of such events the court will disregard the estimate so far as necessary to do substantial justice. The certificate of an engineer in such a case is termed an award: *Sweeney v. Jackson County*, 93 Or. 96, 116 (178 P. 365, 182 P. 380); see also *Mundy v. Louisville & N. R. Co.*, 67 Fed. 633, 637 (14 C. C. A. 587). Where a contract stipulates that a certain engineer is expressly clothed with the broad authority to determine all questions arising in relation to the work, and in case of improper construction or failure to comply with the contract, to suspend the work and order the partial or entire reconstruction, or to declare the contract forfeited, and provides that after the completion of the work the engineer shall make a final estimate of the amount of work done, and the value thereof to be paid by the builder, and determine all disputes, and

for payments to be made on the engineer's certificate, the contract does not create a mere naked agreement to submit differences to arbitration, such stipulations are of the very essence of the contract, and such agreement is not subject to revocation by either party, and an award made by virtue of such contract provisions, and evidenced by the final certificate of the engineer, in the absence of fraud or of such gross mistake as would imply bad faith or a failure to exercise honest judgment, is binding on both parties to the contract, in so far as it is confined to disputes actually subsisting and open to arbitration: *Sweeney v. Jackson County,* supra; *Memphis Trust Co. v. Brown-Ketchum Iron Works,* 166 Fed. 398, 403, 405 (93 C. C. A. 162); *Sweeney v. U. S.,* 109 U. S. 618 (27 L. Ed. 1053, 3 S. Ct. 344).

In the present case the plaintiff has neither alleged nor proven that the engineer was guilty of any fraud or of such gross mistake as would imply bad faith or a failure to exercise honest judgment in estimating that part of the work done by plaintiff to be paid for by Elrod and Trimble, which was considered and passed upon by him.

It is a well-settled rule that the theory adopted by the trial court, with the acquiescence of the parties, will be applied in the appellate court: *Durning v. Walz,* 42 Or. 109, 112 (71 P. 662); *Rasmussen v. Winters,* 82 Or. 674, 679 (162 P. 849); *Wallace v. American Life Ins. Co.,* 111 Or. 510, 525 (225 P. 192, 227 P. 465); *MacVeagh v. Multnomah County,* 126 Or. 417, 424 (270 P. 502).

Sometime after December 24, when the building was completed, Friberg met with Brown to consider the various items on the building. The engineer

allowed several items, as appears from the testimony, that were for extra work and not included in Friberg's claim, and it appears he made an honest endeavor to estimate the amount of a large part of the work in accordance with the terms of the contract. Several of the items, the cost of which could be determined with reasonable accuracy, were allowed by the trial court in its decree. The defendants do not appeal.

It appears from the record that there were some items which were not adjusted by the engineer, ranging from $1.60 to several hundred dollars, and that the determination of the amounts to be allowed for cost plus work was postponed. At the time the final claim was made, December 19, there was a disagreement. It seems there was not a very strenuous endeavor upon the part of either the plaintiff or the engineer to arrive at an agreement. They practically agreed to disagree. These various items were mostly occasioned by changes made in the plans or omissions from the plans and specifications. We have, therefore, carefully examined the testimony in regard to some forty-seven disputed items which were not allowed by the circuit court.

A careful reading of the testimony convinces us that, while the entire claim of plaintiff should not be allowed, under the contract and according to equity plaintiff should be allowed some additional compensation on the items which we have examined, and referred to in the court's findings on pages 173 to 176, inclusive, of the abstract of record. The decree of the circuit court will, therefore, be modified by allowing, on several of these items, an additional amount of $1,292.02.

We think the proper amount of land necessary to be used in connection with the buildings constructed was allowed by the circuit court. Considering all the record, the finding in regard to attorneys' fees made by the trial court will not be disturbed.

With the modification above mentioned, the decree of the circuit court is affirmed.

BROWN and BELT, JJ., concur.