Argued and submitted July 23; resubmitted in banc November 6,
affirmed in part; reversed in part and remanded
November 13, 1979, reconsideration denied January 17,
petition for review allowed March 18, 1980

# LINCOLN CONSTRUCTION, INC.
## *Respondent,*
### *v.*
# THOMAS J. PARKER & ASSOCIATES, INC.
## *Appellant.*

### (No. 77-2278-L-3, CA 11335)

602 P2d 676

Sidney Ainsworth, Ashland, argued the cause for appellant. On the briefs was Jack Davis, Ashland.

William Ferguson, Medford, argued the cause for respondent. With him on the brief was Grant, Ferguson, & Carter, Medford.

JOSEPH, J.

Buttler, J., dissenting opinion.

## JOSEPH, J.

In this action for breach of contract defendant appeals from a judgment in favor of plaintiff. The trial court, sitting without a jury, made a general finding in favor of plaintiff on its complaint and a general finding for plaintiff on defendant's counterclaim and awarded plaintiff $75,765 in damages, plus $22,500 in attorney's fees.

Defendant had a contract with Weyerhaeuser for the construction of roads which Weyerhaeuser was obligated to construct under a timber sale contract it had entered into with the United States Forest Service. Defendant subcontracted with plaintiff to perform that portion of the contract requiring blasting, crushing and stockpiling of aggregate material (rock) necessary to construct the roads.

Defendant's contract with Weyerhaeuser provided in part:

"* * * Weyerhaeuser will pay Contractor during the term hereof, at the later to occur of two-week intervals or within ten (10) days after receipt of an invoice from Contractor, an amount equal to 90% of the value, proportionate to the total amount of the contract, of labor expended and material purchased and incorporated into the work, less the aggregate amount of previous payments, but subject to satisfactory completion or partial completion of a road, roads or crushing of rock; either documented by the United States Forest Service (U.S.F.S.) 'Report of Purchaser's Credit for Specified Road Construction' or a statement of work completed furnished by Weyerhaeuser representatives."

Defendant's subcontract with plaintiff provided:

"* * * Contractor agrees to pay and subcontractor agrees to perform the work described herein for the sum of Three and 10/100 ($3.10) per yard *ured and determined in accordance with agreements.*

"Payment is to be made as set forth in the attached agreements, including the ten percent (10%) deductions, and upon full compliance with the terms of this agreement and the attached agreements said ten percent (10%) reserve shall be paid to subcontractor. (Paragraph IV)

"It is agreed that Subcontractor shall fully perform that portion of both said contracts fully and completely as it relates to the work described herein. (Paragraph II)." (Emphasis supplied.)

The "attached agreements" referred to in the subcontract were the contract documents for the agreement between defendant and Weyerhaeuser.

Both contracts were executed in August, 1976, and plaintiff commenced its performance under the subcontract in September of that year. In May, 1977, plaintiff determined that it had crushed and stockpiled rock in excess of the estimated requirements specified in the contract documents between defendant and Weyerhaeuser and thereupon removed its equipment from the site. Plaintiff sought payment from defendant for the difference between the amount it had already received in periodic payments and the contract price per cubic yard times the estimated requirements specified in the contract documents, that is, 81,451 cubic yards. Weyerhaeuser did not agree that the required quantity of rock had been crushed, and when defendant refused to pay plaintiff according to plaintiff's demand, plaintiff filed a "construction lien" against the property. Shortly thereafter, Weyerhaeuser terminated its contract with defendant.

Subsequently, defendant and Weyerhaeuser negotiated a settlement of their dispute as to what was owing to defendant by Weyerhaeuser, and in doing so they jointly hired an independent surveyor from Klamath Falls to determine the quantity of rock plaintiff had crushed and stockpiled. The surveyor determined that 60,118 cubic yards was then stockpiled, and defendant and Weyerhaeuser added to that volume 6,300 cubic yards of rock which had been put

place to determine what Weyerhaeuser owed defendant for this portion of the contract. Defendant used that measurement in offering to settle with plaintiff. Plaintiff was advised of the fact that the independent surveyor would be measuring the stockpile, but it refused to participate in the supervision of this measurement.

Instead, plaintiff employed its own expert, who determined that plaintiff had crushed and stockpiled more than the estimated contract requirement. It then commenced this lawsuit.

Defendant contends that its contract with plaintiff provided that plaintiff was to be paid for the rock it crushed and stockpiled as measured and determined by Weyerhaeuser (or the Forest Service), and therefore plaintiff was not entitled to rely upon the measurement made by it or by experts employed by it. Generally, contracts which provide that determinations are to be made by a third party are valid and binding on the contracting parties. *Mayer v. Eastside Logging Co.,* 130 Or 341, 278 P 957 (1929); Annot, 110 ALR 137. When payment is conditioned upon the certificate of an engineer, an architect or other party the judgment of that person is conclusive upon the contracting parties, *Gillespie Land and Irrigation Co. v. Hamilton,* 43 Az 102, 29 P2d 158 (1934), unless the determination is made in bad faith or there is fraud. *State Highway Comm. v. Heintz Constr. Co.,* 245 Or 530, 423 P2d 175 (1967); *Friberg v. Elrod,* 136 Or 186, 296 P 1061 (1931). In the absence here of bad faith or fraud, the plaintiff was bound under these rules by the words of the relevant documents. The trial court erred by failing to enforce the contract as written.

Defendant's counterclaim was based on a contention that plaintiff's filing of a lien against Weyerhaeuser and the Forest Service caused Weyerhaeuser to terminate its contract with defendant. Defendant claimed both compensatory and punitive damages. There was evidence at trial from which the trier of fact

could have found that Weyerhaeuser terminated its agreement with defendant for other reasons. Therefore, we cannot disturb the trial court's general finding in favor of plaintiff on defendant's counter-claim.

The judgment is reversed insofar as it awarded plaintiff damages and attorney's fees, affirmed as to defendant's counter-claim and remanded for such further proceedings as may be appropriate.

Affirmed in part; reversed in part; and remanded.

**BUTTLER, J.,** dissenting.

I would affirm the judgment; therefore I dissent.

The majority states the applicable law correctly and also concludes correctly that plaintiff, under its subcontract with defendant, agreed to be bound by the determination of volume of rock crushed and stockpiled as made by Weyerhaeuser or the Forest Service. However, a fundamental requirement to attributing finality to a determination by a third party is that the delegation be clearly expressed, *Highway Com. v. Heintz Constr.,* 245 Or 530, 423 P2d 175 (1967), and a reasonable corollary to that rule is that the provision be adhered to strictly.

That strict adherence is lacking here. The plaintiff did *not* agree to be bound by a measurement made jointly by Weyerhaeuser and defendant. After all, defendant was bound under its prime contract with Weyerhaeuser to accept Weyerhaeuser's determination of volume. However, after the prime contract was terminated a dispute arose with respect to the amount of money Weyerhaeuser owed defendant, and in negotiating a settlement they agreed to employ a land surveyor to determine the amount of rock plaintiff had

rushed and stockpiled, and the volume of rock defendant had put in place, to arrive at a settlement figure as to how much Weyerhaeuser owed defendant with respect to that portion of the prime contract. It was that measurement defendant used in offering to settle with plaintiff.

Because that measurement was one by which plaintiff had not agreed to be bound, the question of how much rock was crushed and stockpiled became an open question of fact.

We must view the evidence and all reasonable inferences which may be drawn therefrom in a light most favorable to plaintiff, and when so viewed the general finding for plaintiff must be affirmed if supported thereby. *Progress Quarries, Inc. v. Lewis,* 281 Or 441, 575 P2d 158 (1978). The trial below was essentially a battle of experts, and there was evidence to permit the trier of fact to find that plaintiff had crushed substantially more rock than defendant claimed. Since there was evidence to support the trial court's general finding for plaintiff, and the amount determined by the trial court was within the permissible range of the evidence, we may not disturb it.

I would also affirm the trial court's award of attorney's fees to plaintiff, although the amount of $22,500 is on the high side. The subcontract clearly authorizes an award of attorney's fees to the prevailing party in any litigation commenced to enforce the contract, the complaint properly alleged plaintiff's entitlement to attorney's fees, and claimed $30,000 as a reasonable amount. Expert witnesses testified at the trial, and on the basis of that evidence, the trier of fact was entitled to conclude that the amount awarded was reasonable.

Accordingly, I respectfully dissent.

Thornton, Roberts and Campbell, JJ., join in this dissent.