Argued and submitted May 5, reversed September 30, 1980

# LINCOLN CONSTRUCTION, INC.,
## *Petitioner,*
### *v.*
# THOMAS J. PARKER & ASSOCIATES, INC.
## *Respondent.*

## (No. 77-2278-L-3, CA 11335, SC 26672)

617 P2d 606

688

Sidney Ainsworth, Ashland, argued the cause for respondent. On the briefs was Jack Davis, Ashland.

William H. Ferguson, Medford, argued the cause for petitioner. With him on the brief was Grant, Ferguson & Carter, Medford.

Before Denecke, Chief Justice, and Tongue**, Howell, Lent**, Linde, and Peterson, Justices.

PETERSON, J.

** Tongue, J. and Lent, J. did not participate in this decision.

## PETERSON, J.

This is an action for breach of contract. The trial court, sitting without a jury, made a general finding for the plaintiff on its complaint, and against the defendant on its counterclaim, and entered judgment for the plaintiff. The Court of Appeals reversed the trial court as to plaintiff's complaint and affirmed as to defendant's counterclaim. 43 Or App 207, 602 P2d 676 (1979). We reverse the Court of Appeals and order the reinstatement of the trial court judgment.

Weyerhaeuser was the successful bidder on a timber sales contract with the United States Forest Service. The contract required Weyerhaeuser to build a logging road to Forest Service specifications. Weyerhaeuser subcontracted with the defendant to construct the logging road. The contract between Weyerhaeuser and defendant provided in part:

"1. CONTRACTOR agrees to * * * fully complete, in a workmanlike manner * * *, all roads and work * * * required under the Keno Timber Sale Contract."

" * * * * * *.

"4. PAYMENT

"The agreed upon contract price shall be $694,114 as detailed in Exhibit G for project described herein and as detailed in Exhibits A, B, C, D, E, F, G, H, I, J attached hereto and made a part hereof. Payments to CONTRACTOR shall not exceed $629,500 during calendar year 1976.

"WEYERHAEUSER will pay CONTRACTOR during the the term hereof, at the later to occur of two-week intervals or within ten (10) days after receipt of an invoice from CONTRACTOR, an amount equal to 90% of the value, proportionate to the total amount of the contract, of labor expended and material purchased and incorporated into the work, less the aggregate amount of previous payments, but subject to satisfactory completion or partial completion of a road, roads or crushing of rock; either documented by the United States Forest Service (U.S.F.S.) 'Report of Purchaser's Credit for Specified Road Construction' or a statement of work completed furnished by WEYERHAEUSER representatives."

Weyerhaeuser advised Mr. Parker, defendant's president, that an estimated 81,450 cubic yards of gravel would be needed. The Weyerhaeuser-Parker contract was not specific as to the amount of gravel that would be needed, nor did the contract provide for payment on the basis of cubic yards of gravel used.

Plaintiff operated rock crushing equipment. Parker met with plaintiff's superintendent and asked for a "price" for processing 81,451 yards of gravel. The superintendent gave him a bid of $3.10 a yard for 81,451 yards. At that time, no contract was executed. Later, defendant's lawyer prepared a contract between plaintiff and defendant pursuant to which plaintiff agreed to perform the blasting, crushing and stockpiling of rock necessary to construct the road. Plaintiff had no responsibility for the construction of the road itself.

That contract contained these clauses:

"Contractor [Defendant] agrees to pay and subcontractor [Plaintiff] agrees to perform the work described herein for the sum of Three and 10/100 ($3.10) per yard as measured and determined *in accordance with the attached agreements.* [1]

---

[1] The defendant claims that the "attached agreements" were the Weyerhaeuser-Parker contract. There is also a question whether the contracts were ever integrated by attachment or otherwise. The trial court could well have found that no agreements were attached. Plaintiff's superintendent denied examining them. Parker himself testified, in answer to a question from the court, that there were no attachments to the contract when he signed. The trial court was troubled by this, and at one point in the trial stated:

" * * * The defense, on the other hand, contends that all of these other materials that are referred to in this agreement were attached at one time, that therefore, we have a complete integrated agreement, and from there we digress to the position of plaintiffs saying, 'Well, they've admitted the contract and apparently everything isn't here,' and I can't rule on everything that isn't here. I don't know what the plaintiff has in mind compared to what the defendant has in mind when you're referring to the matters that are referred to in this agreement but aren't attached to the agreement, so I don't know where to begin.

" * * * * *.

"* * * What I want to find out at this point is whether or not this was the complete agreement when it was executed by the parties,

"Payment is to be made as set forth in the attached agreements, including the ten percent (10%) deductions, and upon full compliance with the terms of this agreement and the attached agreements, said ten percent (10%) reserve shall be paid to Subcontractor." (Emphasis added.)

Plaintiff commenced its performance in September of 1976. In May, 1977, plaintiff determined that it had crushed and stockpiled rock in excess of the estimated requirements specified in the contract documents between defendant and Weyerhaeuser and thereupon removed its equipment from the site. Plaintiff sought payment from defendant for the difference between the amount it had already received in periodic payments and the contract price per cubic yard times the estimated requirements specified in the contract documents. When defendant refused to pay plaintiff according to plaintiff's demand, plaintiff filed a "construction lien" against the property. Shortly thereafter, Weyerhaeuser terminated its contract with defendant.

Subsequently, defendant and Weyerhaeuser negotiated a settlement of their dispute as to what was owing to defendant by Weyerhaeuser. In doing so, they jointly hired an independent surveyor from Klamath Falls to determine the quantity of rock plaintiff had crushed and stockpiled. The surveyor determined that 60,118 cubic yards was then stockpiled, and defendant and Weyerhaeuser added to that volume 6,300 cubic yards of rock which had been put in place on the road to determine what Weyerhaeuser owed defendant for this portion of the contract. Plaintiff was advised of the fact that the independent surveyor would be

---

signed by the parties. If this is it, then you can launch into what you're going into right now. So if we can get over that preliminary hurdle, that would assist me in my future rulings."

We need not reach this question, however, for our decision is based upon other grounds.

measuring the stockpile, but it refused to participate in the supervision of his measurement.

Instead, plaintiff employed its own expert, who determined that plaintiff had crushed and stockpiled more than the estimated contract requirement, 81,451 cubic yards. Plaintiff then commenced this action.

The Court of Appeals held, as a matter of law, that (1) the provisions of the contract between plaintiff and defendant barred any recovery for stockpiled rock beyond the amount "as measured and determined by Weyerhaeuser" (43 Or App at 211); and (2) that matters relating to measurement, determination or payment for rock had been conditioned upon the certificate of a third person (Weyerhaeuser or the Forest Service), and that "the judgment of that person is conclusive."

The Court of Appeals erred in its holding because:

A. The court held that plaintiff was bound, as a matter of law, by the measurement of the independent surveyor hired by Weyerhaeuser and the defendant. The contract between the defendant and the plaintiff did not provide that such determination could be made by a person other than Weyerhaeuser or the Forest Service.

B. The payment provisions of the contracts are ambiguous, and there was a question of fact as to the meaning of the contract. The finding of fact of the trial court must therefore be upheld, as it was supported by substantial evidence.

*A. Delegation of power of final determination*

■ Parties to contracts often provide for resolution of disputes by a skilled, neutral third person. The rationale is that a quick resolution of their differences is commercially more practicable than a potentially expensive lawsuit. When a contract clearly expresses that a third person is to make final decisions respecting specified matters, such agreement is enforceable.

Such third person's determination is final, absent a showing of fraud, bad faith, or a failure to exercise honest judgment. *Friberg v. Elrod,* 136 Or 186, 195, 296 P 1061 (1931).

The plaintiff claims that there is nothing in the language of the contracts which reflects a binding agreement that a third person have authority to make any binding determination. We need not decide that question.

Normally, when contracting parties agree to abide by determinations made by a third person, they do so in the belief that the third person will make such determinations in good faith, and in a fair, impartial manner. To a substantial degree, the honesty, integrity and objectivity of such third person is a factor in the decision of one to agree that a third person make such determinations.

■ Assuming that the contract clearly delegated the determination to a third party, the provision was not strictly adhered to. In negotiating a settlement, Weyerhaeuser and Parker employed a surveyor to measure the volume of stockpiled gravel, and they settled, based upon *his* calculations. Plaintiff, if it agreed to be bound by the determination of any third person, agreed to be bound only by determinations made by Weyerhaeuser representatives or the Forest Service. Here the measurement of gravel was performed by neither. The contract did not bind the plaintiff to accept the determination of a person jointly designated by Weyerhaeuser and the defendant. Even if defendant were otherwise correct as to the delegation issue, it cannot be said, as a matter of law, that such calculations were "a statement of work completed furnished by Weyerhaeuser representatives."

*B. Construction of the Contracts*

The plaintiff claims that the provisions of the Weyerhaeuser-Parker contract quoted above related to periodic payments during the course of construction and did not govern the method of measuring or determining the volume of crushed rock processed by the

plaintiff. The defendant asserts that the contracts are clear and that the Weyerhaeuser determination must be followed.

■ We believe that the payment provisions in the Weyerhaeuser-Parker contract are ambiguous. The contract states that Parker is to be paid at roughly two-week intervals for the amount "of labor expended and material purchased and *incorporated into the work.*" (Emphasis added.) However, the aforementioned clause is qualified by this clause:

> "but subject to satisfactory completion or partial completion of a road, roads or *crushing of rock;* either documented by the * * * U.S.F.S. * * * or * * * by WEYERHAEUSER representatives." (Emphasis added.)

It is not clear how this clause affects payment for work done, but not yet "incorporated into the work," such as the crushing of rock.

Furthermore, the Weyerhaeuser-Parker contract contained a provision for termination by either party on 30 days' notice. The contract is not explicit as to how payment is to be made for work done but not yet incorporated into the work if the contractor is dismissed from the job by Weyerhaeuser after having only partially completed the road work, or if the contractor terminates midstream. The "subject to" clause does not clarify how the measurement of rock crushed but not yet incorporated is to be determined in the event of a termination.

■ Nor is the contract between plaintiff and defendant free from ambiguity. The critical provision of the contract between them refers to the price per yard "as measured and determined in accordance with the attached agreements." The "attached agreements" (the Weyerhaeuser-Parker contract) made no express provision for measurement or determination of crushed rock, beyond the reference to "a statement of work completed furnished by Weyerhaeuser" or a Forest Service "Report of Purchaser's Credit for Specified Road Construction." The payment provisions of the

contract between the parties are ambiguous in that provision is made for measurement and determination of crushed rock by reference to documents which contain no provision for such determinations. To some extent, the contracts were ambiguous, and the trial court was therefore free to consider the plaintiff's evidence and find consistent with the plaintiff's claims.[2]

■ In an action at law, a general finding of the trial court is equivalent to a general verdict, and we must affirm any judgment entered thereon if the finding is supported by substantial evidence. *Progress Quarries, Inc. v. Lewis,* 281 Or 441, 443, 575 P2d 158 (1978). There is ample evidence to support the judgment of the trial court.

We therefore reverse the Court of Appeals and reinstate the trial court judgment for the plaintiff.

---

[2] "As a general rule the construction of a contract * * * is a question of law. * * * The exception to this rule is that if the language of the contract is ambiguous or if technical words, local phrases or terms of art are used and evidence is properly admitted showing meaning, the question becomes one of fact." *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978).