**WASYL, INC., et al.,**
**Plaintiffs-Appellants/Cross-Appellees,**

v.

**FIRST BOSTON CORP.,**
**Defendant-Appellee/Cross-Appellant.**

**Nos. 86–5610, 86–5682.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1986.

Decided April 9, 1987.

Bela G. Lugosi, C. Stephen Davis, David C. Karp, Los Angeles, Cal., for plaintiffs-appellants/cross-appellees.

Michael H. Diamond, Carol B. Sherman, Paul M. Krekorian, Robert Zipser, Los Angeles, Cal., for defendant-appellee/cross-appellant.

Before ANDERSON, NELSON * and CANBY, Circuit Judges.

**J. BLAINE ANDERSON, Circuit Judge:**

Wasyl, Inc. and Edward Smolarski brought suit against First Boston alleging breach of contract, gross negligence and willful misconduct in First Boston's preparation of an appraisal report. The district court granted First Boston's motion for summary judgment, holding that First Boston was entitled to arbitral immunity and that First Boston had contractually exculpated itself from liability through a covenant not to sue. The district court also denied First Boston's motion for Fed.R. Civ.P. 11 sanctions. We affirm.

**BACKGROUND**

This action arises from Option Agreements that Wasyl and Smolarski entered into with John Moller. The Agreements gave Moller the option to purchase Wasyl's and Smolarski's general and limited partnership interests in USA Petroleum Company (USA) at the fair market value of such assets. The Option Agreements provided that the fair market value would be determined in the following manner:

> *Option Price:* The Option price shall be an amount equal to the fair market value of the Partnership Interest as of the Exercise Date. In the event that the parties cannot agree to such fair market value, the fair market value shall be established by three independent apprais-

---

* Following the death of Judge Solomon, Judge Nelson was selected to replace him pursuant to General Order 3.2(g). Judge Nelson has re-

viewed the entire record, the briefs, and the oral argument tapes. The motion for reargument is DENIED.

ers, one selected by the Optionee, one selected by the Optionor, and the third chosen by the other two appraisers.... (ER 16:27). The Agreements provided that they were to be construed and enforced in accordance with the laws of California. (ER 16:4).

Moller exercised his option in the fall of 1983. Because the parties were unable to agree upon a price, appraisers were selected. Wasyl and Smolarski, through USA, chose Lehman Brothers, and Moller chose Bear Stearns & Co. Lehman Brothers and Bear Stearns in turn selected First Boston to act as the third appraiser.

The parties then agreed upon procedures for appraising USA in an agreement letter dated December 1983, which was modified in part by a letter in February 1984. Because Lehman Brothers and Bear Stearns could not agree on a valuation of USA, First Boston, acting pursuant to the February Agreement, resolved those asset valuations on which there was no agreement. After First Boston prepared its Final Report, Wasyl and Smolarski informed First Boston that there were serious errors in the Report, resulting in an alleged $10,000,-000 undervaluation. These alleged errors formed the basis of this lawsuit.

After the case was removed to federal court, First Boston moved for summary judgment, arguing that the covenant not to sue added to the February Agreement was a complete bar to the action. In addition, it moved for Rule 11 sanctions on the grounds that the covenant not to sue rendered the case frivolous. Wasyl made a motion for partial summary judgment, arguing that the covenant not to sue was unenforceable. The district court granted summary judgment in favor of First Boston on the grounds of arbitral immunity and liability exculpation. The motion for sanctions was denied. Both parties appeal.

**STANDARD OF REVIEW**

A grant of summary judgment is reviewed *de novo*. *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). The appellate court must determine, after viewing the evidence in the light most favorable to the opposing party, whether any genuine issue of material fact remains for trial and whether the substantive law was correctly applied. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986).

■ A denial of Rule 11 sanctions is reviewed *de novo* when the denial is based upon a legal conclusion. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986).

**DISCUSSION**

■ The contracts with First Boston called for the valuation of the assets of USA. Those assets are located throughout the United States and Puerto Rico. Because the contracts involve commerce, the question of arbitrability is controlled by federal law. *See Southland Corp. v. Keating*, 465 U.S. 1, 12–13, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984).

The controlling federal law is the Federal Arbitration Act (the Act), 9 U.S.C. § 1, et seq. (1982). Section 2 of the Act provides:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This section is a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25, 103 S.Ct. at 941 (footnote omitted).

■ The federal policy behind the Act favors arbitration agreements. *Mercury Constr.*, 460 U.S. at 24, 103 S.Ct. at 941. The Act does not, however, define "arbitration." While inconsistent state law is preempted, not all state law is preempted upon application of the Act. "State law should be preempted only to the extent necessary to protect the achievement of the aims of the [federal act in question.]" *Chevron U.S.A. Inc. v. Hammond,* 726 F.2d 483, 496 (9th Cir.1984) (citations omitted), *cert. denied,* 471 U.S. 1140, 105 S.Ct. 2686, 86 L.Ed.2d 703 (1985). California, the parties' choice of law, does define "agreement" in its arbitration statutes (as in the context of arbitrating a controversy pursuant to an "agreement"). Cal.Civ.Proc.Code § 1280(a) (West 1982) provides in part:

As used in this title:

(a) "Agreement" includes but is not limited to agreements providing for *valuations, appraisals* and similar proceedings and agreements between employers and employees or between their respective representatives.

(Emphasis added). Because the above definition does not conflict in any way with the federal policy favoring arbitration agreements, and in fact seems to promote such policy, we hold that pursuant to California law the contracts in question called for "arbitration."

■ Since the contracts in question provided a means of "arbitration," First Boston is entitled to arbitral immunity. While the Act does not so provide, case law dictates that arbitrators are immune from civil liability for acts within their jurisdiction arising out of their arbitral functions in contractually agreed upon arbitration hearings. *Cahn v. Int'l Ladies' Garment Union,* 311 F.2d 113, 114–15 (3d Cir.1962); *Yates v. Yellow Freight System,* 501

F.Supp. 101, 105 (S.D.Ohio 1980); *Raitport v. Provident Nat'l Bank,* 451 F.Supp. 522, 527 (E.D.Pa.1978); *Corbin v. Washington Fire and Marine Ins. Co.,* 278 F.Supp. 393, 398–99 (D.S.C.), *aff'd,* 398 F.2d 543 (4th Cir.1968). *See Corey v. New York Stock Exchange,* 691 F.2d 1205, 1211 (6th Cir. 1982); *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Texas,* 551 F.2d 1026, 1032–33 (5th Cir.1977); *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978); *Lundgren v. Freeman,* 307 F.2d 104, 117–18 (9th Cir.1962). *See also Fong v. American Airlines, Inc.,* 431 F.Supp. 1340, 1343–44 (N.D.Cal.1977). The functional comparability of the arbitrators' decision-making process and judgments to those of judges and agency hearing examiners, to whom immunity is extended, generates the same need for independent judgment free from the threat of lawsuits. As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants. Because federal policy encourages arbitration and arbitrators are essential in furthering that policy, it is appropriate that immunity be extended to arbitrators for acts within the scope of their duties and within their jurisdiction. *Corey,* 691 F.2d at 1211; *Corbin,* 278 F.Supp. at 396–97. Since First Boston acted within the scope of its duties and appellants do not challenge First Boston's authority to have resolved the disputed valuations, we affirm the district court's holding that First Boston is entitled to arbitral immunity.

■ We also affirm the district court's denial of sanctions. The district court held that "it was not unreasonable for plaintiffs [appellants] not to know that the covenant not to sue would be a bar to any suit concerning the arbitration process." (ER 31). This legal conclusion is reviewed *de novo. Zaldivar,* 780 F.2d at 828.

Rule 11 applies to the filing of a "pleading, motion, and other paper" in a civil action. The rule requires that such paper

be signed. The purpose of the signature is to fix responsibility upon a specific person for those matters that are the subject of the certificate. "The certificate is addressed to two separate problems ...: first, the problem of frivolous filings; and second, the problem of misusing judicial procedures as a weapon for personal or economic harassment." *Zaldivar*, 780 F.2d at 830. First Boston's motion is based on the first problem, that of frivolousness.

From the text of Rule 11, it is obvious that the pleader need not be correct in his view of the law. Thus, the granting of a summary judgment against the pleader is not dispositive of the issue of sanctions. *Id.* The pleader, at a minimum, must have a "good faith argument" for his view of what the law is, or should be. A good faith belief is an objective condition which a competent attorney attains only after "reasonable inquiry." *Id.* at 831.

A review of the record, including affidavits filed on appellants' behalf, indicates that reasonable inquiry was made in this case (ER 16, pp. 33–36) and that appellants had a good faith argument as to what their view of "the law is or should be."

JUDGMENT AFFIRMED.

\* Of the District of Utah, sitting by designation.