218 F.3d 1085 (9th Cir. 2000)
 PORTLAND GENERAL ELECTRIC COMPANY, an Oregon Corporation, Plaintiff-counter-claim defendant-Appellee,
v.
U.S. BANK TRUST NATIONAL ASSOCIATION, as Trustee for Trust No. 1, Defendantcounter-claimant-Appellant.
 No. 99-35189
 
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted May 2, 2000--Portland, Oregon
Filed July 17, 2000
 Philip Le B. Douglas, Winthrop, Stimson, Putnam & Roberts, New York, New York, for the appellant.
 David B. Markowitz, Jollee Faber Patterson Markowitz Herbold, Portland, Oregon, for the appellee.
 Elliott Adler, Washington, DC, for amicus Appraisal Foundation.
 Jerome Schaefer, Washington, DC, for amicus American Society of Appraisers.
 Appeal from the United States District Court for the District of Oregon, Ancer L. Haggerty, District Judge, Presiding; D.C. No. CV-98-01332-HA
 Before: Donald P. Lay,[1] A. Wallace Tashima, and M. Margaret McKeown, Circuit Judges.
 Opinion by Judge MCKEOWN; Concurrence by Judge TASHIMA; Concurrence by Judge MCKEOWN.
 McKEOWN, Circuit Judge:
 
 
 1
 This case requires us to address a threshold issue of controlling law. We must determine what law governs a challenge to a final appraisal decision issued pursuant to a commercial contract. Portland General Electric ("PGE") and the United States Bank Trust National Association ("the Trust") were parties to a lease agreement under which they agreed that a qualified independent appraiser would be appointed to determine the fair market value of two turbine generators. Although the appraiser's valuation was to be considered final, the Trust was dissatisfied and challenged the appraisal on multiple grounds. In response, PGE sought a court order confirming the appraisal. The district court treated the appraisal decision as an arbitration award, analyzed the case under the Federal Arbitration Act ("FAA"), and confirmed the appraisal. Our decision in this case is governed by Wasyl, Inc. v. First Boston Corp., 813 F.2d 1579 (9th Cir. 1987), where we held that because the FAA neither defines arbitration nor spells out whether the term arbitration includes appraisal, we look to state law. The contract at issue specifies Oregon law as controlling and sets out an appraisal procedure. Oregon courts treat appraisals under common law contract principles rather than under the rubric of arbitration. We therefore hold that Oregon law, not the FAA, governs review of the appraisal decision. Accordingly, wereverse and remand this case for further proceedings.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 In 1974, PGE and the Trust signed a lease agreement whereby PGE leased two turbine generators for a term of 25 years.[2] Upon the expiration of the 25-year term, PGE had the option either to renew at the "fair market rental value," or purchase the turbines at their "fair market sales value." The lease set out a procedure for determining fair market value. In the event the parties were unable to reach mutual agreement on value, either party could petition the American Arbitration Association ("AAA") to appoint an "independent qualified equipment appraiser." The lease provided that"[a]ny appraiser appointed pursuant to the foregoing procedure shall be instructed to determine the fair market sales value or the fair market rental value . . . within 30 days after his appointment and his determination shall be final." The agreement was governed by Oregon law.
 
 
 3
 With the original lease set to expire on August 8, 1999, PGE contacted the Trust in October 1998 to express its interest in determining the fair market rental and sales values under the appraisal procedure. The parties were unable to agree on the values, prompting PGE to bring this declaratory judgment action. PGE requested that the district court (1) appoint an appraiser, and (2) provide the appointed appraiser with detailed instructions that included a specific instruction establishing the proper valuation method.[3]
 
 
 4
 Prior to filing an answer, the Trust filed a "Demand for Arbitration" and petitioned the AAA to appoint an appraiser. The AAA initially contacted Earl Thorsfeldt, a licensed casualty adjuster, but declined to appoint him because of Thorsfeldt's lack of business experience with power plants. Upon referral from Thorsfeldt, the AAA appointed Keith Olds. The Trust objected to Olds based on his qualifications and an alleged conflict of interest, but the AAA stood by Olds' appointment. Having made the requested appointment, the AAA informed PGE and the Trust that the AAA had no further authority in the matter and that all future administration of the appraisal would occur through direct contact between the parties and Olds.
 
 
 5
 The AAA's appointment of Olds rendered moot PGE's request that the district court appoint an appraiser but not PGE's request that the court issue appraisal instructions. PGE asked the district court to issue the requested instructions and the Trust responded by moving to dismiss or stay the action pending completion of the appraisal. The district court, relying on our decision in Raytheon Co. v. Rheem Mfg. Co., 322 F.2d 173 (9th Cir. 1963), declined to issue the instructions on the ground that the lease vested all decisions regarding the valuation method and the appraisal in general with the appraiser, not with the court. The court stayed the action pending completion of the appraisal.
 
 
 6
 A formal appraisal for the Trust's two turbine units was timely issued. The appraisal applied the "in use " valuation method favored by PGE. Notably, the appraisal was drafted on the letterhead of Thorsfeldt's company, "Commercial Equipment Appraiser," and listed Thorsfeldt as the "appointed appraiser" and Olds as the "appointed associate consultant with thefirm of Commercial Equipment Appraisers, Inc."
 
 
 7
 Shortly after receiving the appraisal, the Trust filed a supplemental answer setting forth four counterclaims for declaratory and injunctive relief. The claims essentially sought to vacate the appraisal on grounds that in contravention of the lease, the appraisal was not performed by the appointed appraiser and that the appraiser acted fraudulently or engaged in other misconduct in rendering the appraisal. Along with the supplemental answer, the Trust served extensive discovery requests on the appraisers, their associates, PGE, PGE's parent company, and PGE's counsel in this matter, seeking any and all information relating to the appraisal. PGE responded by moving to dismiss the counterclaims for failure to state a claim, for a protective order or alternatively a stay of discovery under Fed. R. Civ. P. 26(c), for confirmation of the appraisal decision under the FAA, and for a declaration that the appraisal was binding upon the parties pursuant to the terms of the lease.
 
 
 8
 After an oral hearing, the district court stayed discovery but permitted the Trust to conduct one-hour depositions of both Olds and Thorsfeldt on "the limited question of their roles in conducting the appraisal." This limited discovery revealed that around the time Olds was appointed by the AAA, he and Thorsfeldt entered into a "joint venture" agreement pursuant to which they agreed to share responsibilities for the appraisal and split any fees and expenses 50/50.[4] Olds testified that his role in the appraisal was primarily to gather information and that Thorsfeldt's role was to bring to the appraisal his expertise as an appraiser. Thorsfeldt similarly described their respective roles: "The expertise and the fact data was primarily produced by Mr. Olds, because he had the expertise in the power company business, I did not . . . but I had the expertise to guide according to the rules of arbitration when you're doing an appraisal." Olds claimed that Thorsfeldt signed and was listed as "the appointed appraiser" because Olds, who was not a licensed appraiser, was concerned about legal liability stemming from the appraisal. In opposing the confirmation request, the Trust argued that Olds' delegation of authority over the appraisal to Thorsfeldt was impermissible and violated the contract. The Trust also claimed that the appraisers acted fraudulently and engaged in misconduct, including letting PGE ghostwrite a significant portion of the appraisal.
 
 
 9
 After considering the information elicited during the depositions of Olds and Thorsfeldt, the district court analyzed the pending motions under the FAA and concluded that the Trust had not demonstrated clear evidence of impropriety. Having determined that the FAA governed and that the only grounds upon which the Trust could challenge the merits of the appraisal were under the limited grounds set forth in the FAA, the district court confirmed the appraisal and dismissed the Trust's counterclaims for failure to state a claim upon which relief could be granted. Reasoning that the strict rules of the FAA limit discovery, the court also granted PGE's motion for a protective order as to the Trust's discovery requests.
 
 DISCUSSION
 
 10
 The Trust argues on appeal that the district court erred in confirming theappraisal under the FAA, dismissing its counterclaims, and granting a protective order ending further discovery. The Trust urges this Court to vacate the appraisal or, in the alternative, to reverse and remand for additional discovery relevant to its counterclaims. We review de novo a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998). We review the grant of a protective order for an abuse of discretion. Zimmerman v. Bishop, 25 F.3d 784, 789 (9th Cir. 1994). Confirmation of an arbitration award is reviewed de novo. First Options, Inc. v. Kaplan, 514 U.S. 938, 948 (1995).
 
 
 11
 Although the parties concentrate their arguments on whether the appraisal should be vacated for the various reasons advanced by the Trust, the primary issue we must address is determining the governing law.[5] The district court treated the appraisal procedure as an agreement to arbitrate and analyzed the issues under the FAA. We conclude this was error and hold that Oregon law governs.
 
 
 12
 As a preliminary matter, PGE disputes whether this issue was properly preserved because, during the early stages of this proceeding, the Trust argued to the district court that the FAA applied. PGE argues that, to the extent we find the district court erred in analyzing the issues under the FAA, this was invited error on the Trust's part and should not be reconsidered on appeal. Cf. Deland v. Old Republic Ins. Co., 758 F.2d 1331, 1336-37 (9th Cir. 1985) ("one may not complain on review of errors below for which he is responsible.") (quoting Hudson v. Wylie, 242 F.2d 435, 448 (9th Cir. 1957)). Having reviewed the entire record, however, we are of the opinion that both parties argued at various stages in the proceeding that either the FAA or Oregon law applied. Indeed, with respect to confirmation of the appraisal, the Trust urged the district court to apply Oregon law. On appeal the Trust has argued in the alternative, framing its position under both the FAA and Oregon common law. The applicable question of law was properly preserved and was not invited error.
 
 
 13
 The FAA governs any written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. S 2. Curiously, the FAA does not define "arbitration." Is the appraisal procedure at issue here an agreement to settle the valuation issue "by arbitration"? Arbitration and appraisal are distinct methods of dispute resolution and it cannot be assumed that because the FAA governs the former it necessarily must apply to the latter.
 
 
 14
 Although the FAA does not provide any guidance on definitions, it does direct us to the contract itself. The question then is whether the contract calls for settlement of the dispute "by arbitration." In Wasyl, we faced a similar issue. Wasyl, 813 F.2d at 1582. The parties' agreements, which were governed by California law, set forth an appraisal procedure to determine the fair market value of partnership interests. Noting that "[t]he [FAA] does not, however, define `arbitration,' " id. at 1582, we held that because California's arbitration statute expressly defined an arbitration "agreement" to include "agreements providing for valuations, appraisals and similar proceedings," id. at 1582 (quoting Cal. Civ. Proc. Code S 1280(a) (West 1982)), the FAA applied to the appraisal decision in dispute. Oregon law is controlling under this contract and hence, under Wasyl, we must determine how Oregon treats appraisals relative to arbitrations.
 
 
 15
 Unlike California, Oregon's arbitration statute does not define "arbitration"to include appraisals. See Or. Rev. Stat. S 36.110.[6] Instead, Oregon courts have distinguished appraisals from arbitrations and have expressly held that appraisals are not governed by Oregon's arbitration statute. Shepard & Morse Lumber Co. v. Collins, 256 P.2d 500, 502-03 (Or. 1953); Budget Rent-A-Car v. Todd Inv. Co., 603 P.2d 1199, 1201-02 & n.4 (Or. Ct. App. 1979). This distinction stems from the different treatment that Oregon courts historically afforded appraisals versus arbitrations, grounded in the fundamental differences between the two forms of dispute resolution. See Shepard & Morse, 256 P.2d at 502-03. On the one hand, arbitration agreements permit arbitrators to resolve pending disputes between the parties and to determine ultimate liability, generally through adversary hearings at which evidence is admitted and the arbitrator plays a quasi-judicial role. Such agreements were not enforced at common law on the ground that they deprived the courts of jurisdiction to resolve the controversy. See Budget Rent-A-Car , 603 P.2d at 1201. Appraisal agreements, on the other hand,
 
 
 16
 never encountered hostility at common law, because they required only the submission of isolated issues to an appraiser, and did not attempt to usurp the judi ciary's power to resolve the case as a whole. Appraisal agreements, then, are typically limited to ministerial determinations such as the ascertainment of quality or quantity of items, the ascertainment of loss or damage to property, or the ascertainment of the value of property.
 
 
 17
 Id. at 1200 (citations omitted).
 
 
 18
 Although the common law rule has been abrogated by Oregon's arbitration statute as to arbitrations, appraisals continue to be reviewed under common law contract principles. Id. at 1201-02.
 
 
 19
 Under Oregon contract law, "[w]hen a contract clearly expresses that a third person is to make final decisions respecting specified matters, such agreement is enforceable." Lincoln Constr., Inc. v. Thomas J. Parker & Assocs. Inc., 617 P.2d 606, 609 (Or. 1980). In enforcing the agreement, courts determine whether the appraisal "strictly adhered to" the contract. Id. If the appraisal failed to conform to the parties' agreement, it is not binding as a matter of law. If the appraisal was rendered in accord with the contract, it is final and binding upon the parties "absent a showing of fraud, bad faith, or a failure to exercise honest judgment." Id. ; see also Valenti v. Hopkins, 926 P.2d 813, 817-18 (Or. 1996).
 
 
 20
 In this case, the district court construed our decision in Raytheon as holding as matter of law that a contractually mandated appraisal is the equivalent of an arbitration subject to the FAA. This is not the case. Raytheon stands for the proposition that courts play a limited role in construing appraisal agreements, serving only to enforce the parties' bargain, not "to add gloss to the parties' own language." Raytheon, 322 F.2d at 182. Construing an appraisal agreement similar to the provision at issue here, the Raytheon court held that the parties bargained for an appraiser to determine the meaning of "fair market sales value," and agreed to be bound, absent fraud, by both that determination as well as the resulting appraisal. Id. The Raytheon court's subsequent discussion of the FAA and California's arbitration statute served to highlight the similarity of its role in reviewing arbitration agreements under these statutes and its role in reviewing appraisal agreements. Contrary to the district court's construction, however, in Raytheon we did not apply the FAA to the appraisal agreement, nor did we hold that appraisals are automatically subject to the FAA. See id. at 182-83.
 
 
 21
 Because the district court's decision to confirm the appraisal and to dismiss the Trust's counterclaims[7] was predicatedon application of the FAA, including the confirmation provisions of S 9, we reverse the declaratory judgment ruling that the appraisal is binding and the dismissal of the counterclaims. We remand these issues for reconsideration under the applicable Oregon contract law. Finally, in light of our disposition, we need not address the issue of the protective order regarding discovery. On remand we leave to the district court's discretion the extent to which additional discovery shall be permitted.
 
 
 22
 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.
 
 
 [2]
 PGE also leased four turbines from two other trusts administered by the Trust. The additional two trusts were parties to this action before the district court but are not parties in this appeal.
 
 
 [3]
 The parties disagreed as to the appropriate valuation method required by the lease and by Oregon law. PGE favored the "in the box" or "in place" valuation method, which did not take into account transportion or installation costs. The Trust, on the other hand, urged the "continued use" or "in use" valuation method, which valued the turbines as installed and in operation at the buyer's premises, and included the amount it would otherwise cost to transport and install the unit elsewhere. The "continued use" method generally results in a higher appraised value than the "in the box" method.
 
 
 [4]
 In his deposition, Olds described the events leading up to the joint venture agreement as follows:
 Olds: Well, see, [Thorsfeldt] called me, as I stated before, and asked if I would be interested in doing the appraisal, and I said yes, I'm not familiar with, you know, with what the total appraisal process was, but I told him I would certainly -I would certainly be there, and this was before I was appointed.
 Q. Did you have an understanding with him that he would continue to be involved after you were appointed?
 Olds: Certainly.
 Q. What was that understanding?
 Olds: That we would do it as a partnership, do the appraisal, and he was an experienced appraiser, well versed in writing appraisals and formatting them and so forth, and he also had an office that we could use and so forth, and there was no question in my mind that I needed him, or we needed each other.
 
 
 [5]
 Given the procedural posture of this case, we do not have the authority to vacate the appraisal at this juncture and on this record. The Trust never asked the district court to vacate the appraisal, rather the issue has now arisen in the context of our review of the district court's ruling on PGE's motions to confirm the appraisal and to dismiss the Trust's counterclaims.
 
 
 [6]
 The Oregon statute defines the phrase "arbitration" to mean "arbitral proceedings" but, like the FAA, does not provide a definition of what falls within the scope of arbitration.
 
 
 [7]
 We note that although the Trust's counterclaims were dismissed for failure to state a claim, the district court considered evidence extrinsic to the pleadings, such as the deposition testimony of Olds and Thorsfeldt and the joint venture agreement which was produced for the first time during the limited discovery, rendering the dismissal tantamount to a summary judgment.
 
 
 
 23
 TASHIMA, Circuit Judge, with whom LAY, Circuit Judge,* joins, concurring:
 
 
 24
 I concur fully in Judge McKeown's majority opinion. I write separately to express my doubts as to whether Wasyl, Inc. v. First Boston Corp, 813 F.2d 1579 (9th Cir. 1987), by which we are bound and which governs the disposition of this case, was correctly decided.
 
 
 25
 By enacting the Federal Arbitration Act (FAA), "Congress declared a national policy favoring arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984) (emphasis added). See also Craft v. Campbell Soup Co., 177 F.3d 1083, 1090 (9th Cir. 1999) (discussing the Act's legislative history and recognizing that "the FAA was part of an effort to gain uniformity in the application of agreements to arbitrate sales and commercial disputes") (emphasis added). As the majority opinion correctly concludes, Wasyl accepted state law as binding and as supplying the meaning of the term "arbitration" in the FAA. See Wasyl, 813 F.2d at 1582.
 
 
 26
 It seems counterintuitive to look to state law to define a term in a federal statute on a subject as to which Congress has declared the need for national uniformity. Yet, that is exactly what Wasyl requires. This case illustrates the result of the Wasyl rule -a patchwork in which the FAA will mean one thing in one state and something else in another. In California, an "appraisal" is an "arbitration" under the FAA, but in Oregon it is not. This does not appear to me to be the way in which Congress intended that the FAA be interpreted. It is one thing to look to state law as a guide in fashioning federal common law; it is quite another to accept it as binding in interpreting the meaning of federal law.
 
 
 27
 I believe that it is our obligation independently to define "arbitration" under the FAA as best we can, as a matter of federal law. See NLRB v. Natural Gas Util. Dist. , 402 U.S. 600, 603 (1971) ("In the absence of a plain indication to the contrary, . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law.") (internal quotation marks and citations omitted). I recognize, however, that, as a three judge panel, we are bound by Wasyl. I suggest that, at some point in some case, the court ought to rethink the patchwork created by Wasyl.
 
 
 
 Notes:
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.
 
 
 
 28
 McKEOWN, Circuit Judge, special joinder in concurrence:
 
 
 29
 Although I am the author of the opinion, I join in Judge Tashima's concurrence because I question the vitality of Wasyl, Inc. v. First Boston Corp., 813 F.2d 1579 (9th Cir. 1987). At issue is a question of statutory interpretation. Whether this appraisal contract calls for an "arbitration" within the scope of the FAA therefore strikes me as a question of federal law. See Mitsubishi Motors Corp. v. Soler Chrysler/Plymouth,Inc., 473 U.S. 614, 626 (1985) (holding courts determine whether parties agreed to arbitration under FAA's "substantive law of arbitrability") (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).