## PROVIDENCE WASHINGTON INS. CO. v. FARMERS ELEVATOR CO., Inc.
### No. 5179.

Court of Civil Appeals of Texas. Amarillo.
June 17, 1940.

Monning & Singleton, of Amarillo, for appellant.

H. H. Smith, of Panhandle, for appellee.

STOKES, Justice.

This is an appeal from a judgment of the county court setting aside an award of two appraisers and an umpire duly appoint-

ed under the provisions of an insurance policy issued by appellant upon a truck and trailer. The property was destroyed by fire on February 20, 1939, and under the provisions of the policy appellant and appellee each selected an appraiser who met and selected an umpire and the three of them organized as an appraisal or arbitration committee to determine the amount of the loss. The appraisers met on the 24th of May, 1939, and assessed appellee's damages at $550. Appellee, contending it ought not to be bound by the award because the amount thereof was determined as a result of fraud, gross mistake and bias on the part of the appraisers and gross inadequacy in the amount awarded, filed suit to set it aside and to recover on the policy.

The case was submitted to the court without the intervention of a jury and resulted in a judgment setting aside the award of the appraisers and a recovery by appellee of the sum of $800, from which appellant has perfected an appeal to this court.

The policy contained the usual provision for the appointment of appraisers and the selection by them of an umpire to determine the amount of damages occasioned by the destruction of the truck and trailer in the event the insured and the insurer could not agree thereon.

Appellant assigns error of the court in setting aside the award and rendering judgment against it for a greater amount because the evidence was not sufficient to establish bias or prejudice of the appraisers nor fraud, accident, mistake nor any other ground upon which, under the law, the court was warranted in such action. The appointment of the appraisers, the oath subscribed by them, and the return of their award are all in regular form and nothing appears upon the face of any of the proceedings conducted by them which would indicate irregularity of any sort. Appellee contends, however, that the appraisers acted in an arbitrary manner; that the award was the result of a gross mistake and that there was collusion of the umpire and one of the appraisers with the adjuster of appellant. It contends that the appraisers acted arbitrarily because two of them had not seen the truck before the fire; knew nothing of its value before its destruction, and arbitrarily used a price list of second-hand trucks in arriving at the value of the truck and trailer which were destroyed.

The record shows that J. W. Christopher, the appraiser appointed by appellee, was a resident of Whitedeer where the truck and trailer were destroyed and had been in the wholesale oil and gas business there for some two years prior to the fire. Christopher testified that he was familiar with the truck and trailer and had seen them the day before they were destroyed. He also testified that he was familiar with the market value of the vehicles. In addition to this, the record shows the appraisers had before them a number of price lists showing the market prices of various makes of second-hand trucks and that they made an examination of the remains of the destroyed vehicles, which consisted of the frames, wheels, a portion of the tires and other parts that had not been destroyed by the fire. The adjuster for appellant testified that a very definite idea of the condition of such vehicles before they were destroyed by fire could be obtained by inspection of the indestructable parts after they had been damaged by examining the wearing portions and observing generally the apparent wear and tear to which the vehicle had been subjected before its destruction. It was also shown that the speedometer registered 38,000 miles. In addition to this, the appraiser selected by appellant was an employee of an automobile dealer at Amarillo and the umpire selected by the two appraisers was an automobile dealer in the same city. We think it reasonable, therefore, to assume that both of the appraisers and the umpire had a fair knowledge of the matters they were appointed to investigate. When the appraisers and umpire met to consider the matter, Christopher, the appraiser appointed by appellee, was of the opinion that the value of the truck and trailer prior to their destruction by fire was $900, the value of the truck, according to this witness, being $700 and the value of the trailer $200. His estimate of the salvage after the fire was $100, leaving $800 as the damage for which he thought the award should be made. Wilkerson, the appraiser appointed by appellant, was of the opinion that the damages should be assessed at $425. There being an irreconcilable difference between them, they discussed the matter with Casey, the umpire, who was of the opinion that the damage should be assessed at $650. The record shows they discussed the matter fully and at length and finally agreed that the damages should be assessed at $550.

The testimony shows that, while the price lists were considered by the appraisers, their conclusions were not based wholly thereon, but the award was from 25% to 50% greater than the price lists indicated similar vehicles were worth on the market at the time they were destroyed. Christopher and Casey were witnesses at the trial of the case in the county court and they both testified that they performed their duties to the best of their ability and each said that from the actions of the others he believed that all three of the arbitrators did likewise.

■ We do not see anything in this or any of the testimony contained in the record that would indicate the appraisers acted in an arbitrary manner. On the other hand, the record indicates they acted honestly and fairly, having in view only the desire and purpose to make a fair and honest adjustment of the matter and return a just and fair award.

■ Appellee further contends in this connection that the award was arbitrary, inaccurate and unfair because it was made without the testimony of witnesses having been adduced at the hearing and without any information concerning the condition of the vehicles before they were destroyed. It is not shown by the record that any witnesses testified before the appraisers, but it does not appear that appellee tendered any witnesses or made any request that testimony be heard. Furthermore the record contains no suggestion as to the nature of any evidence or testimony that was available to the appraisers nor that they declined to hear testimony or receive any information that could have been produced. Under this state of the record appellee is in no position to contend that the appraisers acted arbitrarily or that their award should be set aside on account of failure of the appraisers to hear testimony. In the absence of allegation and proof as to what the evidence may have been or a showing that there was evidence which was available and that it was material, it must be concluded that there was no such evidence available or, if so, that it was not material to the issue. Elder v. McLane, 60 Tex. 383; Orient Insurance Co. v. Harmon, Tex.Civ.App., 177 S.W. 192.

■■ As a basis for the judgment the trial court found that the appraisers' award was arrived at by and through gross mistake on the part of the appraisers; that the appraisers were partial to appellant and that the award was grossly inadequate. We find nothing in the record which, in our opinion, warrants the finding of the court that the appraisers were partial to appellant. Indeed, we are unable to resist the conclusion that the acts and conduct of the appraisers and umpire in conducting the appraisal and in their discussions and efforts to arrive at a just and fair award, as shown by the evidence, reveal a high degree of fairness and impartiality. Neither of them was in any manner interested in the subject of the controversy. Neither of them was shown to be particularly friendly to either the appellee or the appellant, and all three of them must have been possessed of more than the average knowledge concerning the value of the destroyed property. There is no suggestion in the record that they declined to consider any material phase of the controversy or any evidence or information that was available to them. The most that can be said of the award is that it may have been for a smaller amount than might have been determined by a court or jury, and it is well settled that a court will not substitute its judgment for that of the appraisers in the absence of a showing that the award was induced by fraud, accident, mistake or some circumstance which would render it unjust and unfair to one or both of the interested parties. Home Ins. Co. v. Walter, Tex.Civ.App., 230 S.W. 723; Brodhead-Garrett Co. v. Davis Lumber Co., 97 W.Va. 165, 124 S.E. 600; Larson v. Nygaard, 148 Minn. 104, 180 N.W. 1002.

■ As to the finding of the court that the award was effectuated through gross mistake on the part of the appraisers, we do not find any evidence in the record which, in our opinion, is of such a nature as to form a basis for such conclusion. As we have already said, the award may have been for a less amount than the court would have adjudged, but, even so, the court was not warranted for that reason in concluding that the award was based upon a mistake. The difference between the conclusion of the court and that of the appraisers was purely one of opinion. The award was the unanimous finding of the appraisers and umpire. It was arrived at deliberately and apparently in good faith. The only ground upon which the court is warranted in setting aside such an award on account of mistake is upon a showing that the award does not speak the intention of the appraisers. In this case the award was signed by all three

of them and, while they differed in the beginning, their minds met in the final conclusion and neither of them testified to any fact which would indicate the award was different in any respect from that which all three of them intended it should be. The correct rule in this respect was expressed by the court in the case of Gulf Insurance Co. v. Pappas, Tex.Civ.App., 73 S.W.2d 145, 146, in the following language: "The true question in such cases is, Were the appraisers laboring under a mistake of fact by which their award was made to operate in a way they did not intend?". Citing many authorities.

The only evidence of collusion that could be deduced from the record is that the opinion of Wilkerson, the appraiser who was appointed by appellant, as to the value of the property before its destruction by fire, is that it was the same as the opinion of the insurance adjuster, which was $650, and that this coincided with the value placed thereon by Casey, the umpire. In view of the fact that both Wilkerson and Casey were engaged in the automobile business and, therefore, must have been familiar with the value of such vehicles, and that the insurance adjuster was shown to have been constantly engaged in the business of appraising and adjusting claims for loss of such vehicles by fire arising under insurance policies, we cannot say that this circumstance, standing alone, shows collusion between them. There is no other intimation in the testimony which indicates any collusion and, in our opinion, the fact that the opinions of these parties coincided to some extent may be fully accounted for without necessarily impugning their motives. It is held that nothing will be presumed against such an award. Every presumption will be indulged in its favor unless it is contradicted by proof. Robbs v. Woolfolk, Tex.Civ.App., 224 S.W. 232; Green v. Franklin, 1 Tex. 497.

In support of the judgment entered by the court setting aside the award of the appraisers and appellee's contention that the same should be upheld, appellee cites us to the cases of Continental Insurance Co. v. Guerson, Tex.Civ.App., 93 S.W.2d 591, and Home Insurance Co. v. Ketchey, Tex. Civ.App., 45 S.W.2d 350. In the Guerson case, among other things which indicated the appraisers did not give serious consideration to their duties, it was shown that the property destroyed by fire was household furniture, much of which was completely destroyed, nothing remaining but ashes. The appraisers promised to Mrs. Guerson an opportunity to appear before them at the scene of the fire and that they would consider her statements concerning the nature and value of the articles of furniture destroyed. They indicated the time when they would be there and Mrs. Guerson went to the house at the appointed time but found the appraisers had already conducted their investigation and left the premises. She was not afforded any other opportunity to appear before them, and it was shown they had no opportunity to know, and in fact did not know, anything about the value of the property destroyed and made no serious effort to inform themselves of that important feature of their duties. In the Ketchey case it was shown that the entire appraisal was dominated by McClellan and that Newbury knew nothing about the property that had been destroyed. A reading of the facts upon which the opinions in those cases were based will show that the purported appraisals were wholly unjust, arbitrary and lacked the elements of fairness. The instant case is not of that nature and is not controlled by the conclusions of the courts in those cases. We think the entire record before us impels the conclusion that the appraisal was conducted in a fair and proper manner; that the award was the conclusion of the appraisers and umpire, fairly and honestly reached; that there was no partiality or collusion shown, and that the appraisers acted in an honest and conscientious manner. Under these circumstances the trial court was not warranted in setting aside the appraisal and its judgment will have to be reversed.

The case seems to have been fully developed, and since, in our opinion, the parties were bound by the award returned by the appraisers, it becomes our duty to render such judgment as the trial court should have rendered, which is that the appellee recover only the amount of the award, viz., $550. This amount having been duly tendered and paid into the registry of the trial court, it will be ordered delivered to appellee by the clerk upon application and receipt therefor, the costs in the trial court and in this court being adjudged against the appellee.