**HARTFORD LLOYD'S INSURANCE COMPANY, Plaintiff–Appellant, Cross–Appellee,**

v.

**Walter J. TEACHWORTH d/b/a the Seasons Apartments, Defendant– Appellee, Cross–Appellant.**

No. 89–2041.

United States Court of Appeals, Fifth Circuit.

April 26, 1990.

Michael R. Knox, Deborah W. Schilcher, Knox, Beadles & Johnston, Dallas, Tex., Tom L. Lorance, Houston, Tex., for plaintiff-appellant, cross-appellee.

David Holman, Mike Gallagher, Fisher, Gallagher, Perrin & Lewis, Michael Maloney, Houston, Tex., for Teachworth.

Before GEE, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The focal issue in this appeal is whether an insurance appraisal conducted pursuant to the terms of a Texas multi-peril insurance policy constitutes an "arbitration" within the coverage of the Federal Arbitration Act, 9 U.S.C. §§ 1–15 (the "FAA"). Appellant Hartford Lloyd's Insurance Company brought this action, seeking a declaration that an appraisal award rendered in a dispute between itself and appellee Walter Teachworth is invalid. The district court, treating the appraisal as an arbitration, reviewed the award under the FAA, and affirmed the award after a non-jury evidentiary hearing. Having determined that such an insurance appraisal is not an arbitration under the FAA, we reverse and remand.

## I.

### BACKGROUND

Appellee Walter Teachworth owns the Seasons Apartments in Galveston, Texas which were seriously damaged, first by Hurricane Alicia and later by freezing temperatures, in 1983. The property was insured for such risks by appellant Hartford Lloyd's Insurance Company ("Hartford"). However, Teachworth and Hartford were unable to agree on the extent of the damage. Teachworth's policy, which was on a form prescribed by the Texas State Board of Insurance, provided for re-solving such disputes through an "appraisal". The appraisal provision in the policy reads:

**Appraisal** ... In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured, or this Company, such umpire shall be selected by a judge of a district court of a judicial district where the loss occurred. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item: and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

Teachworth invoked the appraisal provision and appointed Jack Mendenhall to be one of the appraisers. Hartford named Milton Rudick to be the other appraiser. When Mendenhall and Rudick were unable to agree on an umpire, a Galveston County Judge appointed Russell Burwell to serve in that capacity.

After conducting their investigations, the appraisers did not agree on the amount of Teachworth's loss. Mendenhall estimated that the total loss was $4,154,681.00, while Rudick appraised the damage at $1,419,951. Pursuant to the policy, the appraisers submitted their differences to umpire Burwell. Burwell substantially agreed with Mendenhall, and the two of them rendered a written appraisal award in the amount of $3,770,043.

Hartford promptly filed this declaratory judgment action, alleging that the appraisal

award was invalid because Mendenhall had not acted impartially and because Teachworth had acted fraudulently during the appraisal process.[1] Teachworth counterclaimed for recovery under the policy. Hartford responded that Teachworth was not entitled to recover under the policy because his conduct during the appraisal process violated several policy provisions. The district court bifurcated the case and ordered that the validity of the award be tried separately from the rest of the case.

The court originally ruled that the validity of the award would be tried to a jury. However, the court reconsidered and reversed its ruling, *sua sponte*, on the basis that the appraisal award was an arbitration award to which the FAA must apply. Accordingly, the court decided that the appraisal award must be reviewed under sections 10 and 11 of the FAA, which circumscribe a court's authority to vacate or modify an arbitration award. The court then determined that sections 10 and 11 did not afford Hartford the opportunity for a jury trial on the validity of the award, and the issue of validity was tried to the bench.[2]

After a four-day evidentiary hearing, the district court concluded that none of the grounds for vacating or modifying an award enumerated in section 10 or 11 existed in this case and affirmed the award. The court then disposed of the other issues in the case as if raised by cross-motions for summary judgment. In its final judgment, the court decreed that Teachworth was entitled to the full amount of the appraisal award, plus interest. Hartford appeals, contending that the district court erred by reviewing the appraisal award under the FAA.

## II.

## ANALYSIS

### A. *Waiver.*

 Before reaching the merits of Hartford's argument that the FAA should not apply in this case, we must determine whether Hartford failed to preserve any such error for appeal. Teachworth contends that Hartford waived any error as to the applicability of the FAA because it failed to object to the court's *sua sponte* order in which it ruled that the FAA applied and that there would not be a jury trial on the validity of the award. In its *sua sponte* order, the court offered the parties five days in which to move for reconsideration. Hartford did not do so.[3] However, we believe that Hartford had sufficiently made its position on the applicability of the FAA known to the court before the order was made to satisfy the requirements of Fed.R.Civ.P. 46.

> Rule 46 provides:
> Formal exceptions to rulings or orders of the court are unnecessary; ... it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which the party desires the court to take....

The purpose of the rule is that the district court should be given notice of an alleged defect so the court has an opportunity to cure it. *See* 9 C. Wright & A. Miller, Federal Practice and Procedure 2472 (1971). Normally, "that purpose can be adequately served only by the making of an objection on the record, but if the court and the other litigants know what action a party desires the court to take, the purpose of the rule is served." *Stone v. Morris*, 546 F.2d 730, 736 (7th Cir.1976). In such

---

1. Specifically, Hartford alleges that Mendenhall considered himself an agent and advocate for Teachworth and repeatedly referred to Teachworth as his "client", that Mendenhall based his estimates solely on what Teachworth told him without doing an independent investigation, and that Mendenhall failed to present explanations or documentation to support his estimates. In addition, Hartford claims that Teachworth withheld vital information and misrepresented important facts and figures.

2. Hartford does not challenge the district court's ruling that Hartford would not be entitled to a jury trial under the FAA.

3. Ironically, Teachworth did move for reconsideration and filed a brief in which he argued that the FAA should not apply and that there should be a jury trial.

circumstances, a formal objection is not required, "and the failure of the court to take the desired action may be asserted as error on appeal." *Id.; see also Steinhauser v. Hertz Corp.*, 421 F.2d 1169, 1173 (2d Cir.1970) (no formal objection to jury charge required where counsel had made his position clear to the court before the ruling.)

In this case, there is no doubt that the district court and Teachworth knew Hartford's position on the applicability of the FAA. Beginning with its Brief in Opposition to Bifurcation of Trial, Hartford repeatedly argued to the district court that the insurance appraisal was not an arbitration and that the award should be reviewed under Texas law. After receiving another brief in which Hartford specifically contended that the FAA should not apply, the district court made its original ruling that the issue of the validity of the award should be tried to a jury. Then, thirteen days before the court made its *sua sponte* ruling that the FAA did apply, Hartford filed another brief in which it again contended that the appraisal award was not an arbitration award and that the award should accordingly be reviewed under Texas law. Under these circumstances, we believe the purpose of Rule 46 was satisfied, and Hartford's failure to move for reconsideration of the court's *sua sponte* order did not waive its challenge to the court's ruling.

### B. *Applicability of the FAA.*

██ The Federal Arbitration Act, 9 U.S.C. §§ 1–15, sets forth the general federal law relating to arbitration. The Act was passed to ensure that courts would honor and enforce the contractual agreements of parties who choose to resolve their disputes through the informal process of arbitration. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625–26, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). The FAA is a congressional declaration of a national policy in favor of arbitration, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and pursuant to

its terms courts must "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985); *see* 9 U.S.C. § 2. The Act provides for district courts to stay legal proceedings on issues referable to arbitration, 9 U.S.C. § 3, and empowers the courts to compel arbitration of arbitrable issues, 9 U.S.C. § 4. Once an arbitral award has been rendered, sections 10 and 11 of the FAA, 9 U.S.C. §§ 10, 11, establish the circumstances in which a court may vacate or modify the award. *See Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir. 1980).

██ The *sine qua non* of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce. *Peoples Security Life Insurance Co. v. Monumental Life Insurance Co.,* 867 F.2d 809, 813 fn. 4 (4th Cir.1989). Hartford contends that the district court erred in applying the FAA in this case because (1) the insurance appraisal provision did not constitute an "arbitration" agreement within the FAA; (2) the insurance policy does not evidence a transaction in interstate commerce; and (3) the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.,* precludes application of the FAA in a way that would supersede or impair Texas insurance laws. We agree that the appraisal provision was not an arbitration agreement within the coverage of the FAA and do not reach Hartford's other contentions.

Insurance appraisals are generally distinguished from arbitrations. *See, e.g., Southeast Nursing Home, Inc. v. St. Paul Fire and Marine Insurance Co.,* 750 F.2d 1531, 1537 (11th Cir.1985); 14 G. Couch, *Cyclopedia of Insurance Law* § 50:5 (2d ed. 1982). 6 C.J.S. *Arbitration* § 3 (1975); 44 Am.Jur.2d *Insurance* § 1680 (1982). While both procedures aim to submit a dispute to a third party for speedy and efficient resolution without recourse to the courts, there are significant differences between them. For example, an arbitration agreement may encompass the entire con-

troversy between parties or it may be tailored to particular legal or factual disputes. In contrast, an appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy. Additionally, an arbitration is a quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses. Appraisals are informal. Appraisers typically conduct independent investigations and base their decisions on their own knowledge, without holding formal hearings.[4] The appraisal conducted in this case conforms to these general considerations. The procedure determined only the value of Teachworth's loss, and the appraisers conducted their evaluations without holding hearings.

■■■ Under Texas law it is clear that an insurance appraisal which only determines the value of a loss is not an arbitration. *Standard Fire Insurance Co. v. Fraiman*, 514 S.W.2d 343, 344 (Tex.Civ. App.—Houston [14th Dist.] 1974, no writ); *Huntington Corp. v. Inwood Construction Co.*, 348 S.W.2d 442, 444 (Tex.Civ.App. —Dallas 1961, writ ref'd n.r.e.); 7 TEX. JUR.3d *Arbitration and Award* 1 (1980); 46 TEX.JUR.3d *Insurance Contracts and Coverage* 466 (1986). Teachworth contends, however, that we may not look to state law. Rather, he argues, we must apply "federal substantive law" to determine whether the appraisal was an arbitration.[5]

The Supreme Court has instructed that the FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial*

*Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Thus, issues of arbitrability are questions of federal substantive law. *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984). However, the FAA does not define, and the Supreme Court has not defined, what constitutes an arbitration within the coverage of the Act. The Ninth Circuit resolved this dilemma in *Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir.1987), by supplementing federal law with a state definition of arbitration. Attempting to determine whether a certain appraisal was an arbitration, the *Wasyl* court acknowledged that federal substantive law controls questions of arbitrability, but noted that the FAA does not define "arbitration". *Wasyl*, 813 F.2d at 1581–82. The court reasoned that since state law is only preempted to the extent necessary to protect the achievement of the aims of the FAA, in circumstances such as these a court should be able to look to state law provided it is not inconsistent with the goals of the FAA. *Id.* at 1582. Since California's statutory definition of agreements to arbitrate included appraisals and did not conflict with the policies of the FAA, the court borrowed the definition and held that the appraisal constituted an arbitration. *Id.* The Ninth Circuit's reasoning is persuasive. *See also, Volt Information Services, Inc. v. Board of Trustees,* —— U.S. ——, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (The FAA preempts state law only to the extent that it stands as an obstacle to the accomplishment of the purposes and objectives of the FAA.)[6]

---

4. For additional discussions of the differences between appraisals and arbitrations, *see* R. Keeton & A. Widiss, *Insurance Law* § 9.6 (1988); A. Windt, *Insurance Claims and Disputes* § 9.32 (2d ed. 1988); 5 Am.Jur.2d *Arbitration and Award* § 3 (1962).

5. Hartford argues that we should look to state law to determine whether the appraisal was an arbitration. Hartford relies on *Duplan Corp. v. W.B. Davis Hosiery Mills, Inc.*, 442 F.Supp. 86, 88 (S.D.N.Y.1977), in which the court decided that the "question whether a valid arbitration clause exists involves general contract principles; state law governs the disposition of that question."

Accordingly, in *Duplan* the court applied state contract law to determine the enforceability of an arbitration clause which one party had unilaterally added to a contract. *Id.* In this case there is no question regarding the validity of the insurance policy or the appraisal clause. Thus, cases such as *Duplan* are inapposite. *See also Eassa Properties v. Shearson Lehman Brothers, Inc.*, 851 F.2d 1301, 1304–05 fn. 7 (11th Cir.1988) (applying state partnership law to determine if agreement to arbitrate was valid).

6. The eighth circuit recently interpreted *Volt* as requiring that:

In this case, following the Texas and majority distinction between appraisals and arbitrations would not be inconsistent with the policies embodied in the FAA. The preeminent concern of Congress in enacting the FAA was to ensure the judicial enforcement of privately made agreements to arbitrate, by overruling "the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). Excluding Texas insurance appraisals from the coverage of the FAA would not frustrate that purpose. On the contrary, the FAA would be extended beyond its intended scope by mandating that appraisal provisions, which are not arbitration agreements under Texas law and thus could not have been intended as arbitration agreements by the parties, must nonetheless be treated so. Texas courts have enforced insurance appraisal agreements for over one hundred years. *E.g., Scottish Union & National Insurance Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630 (1888). Indeed, in older Texas cases, by distinguishing appraisals from arbitrations the courts avoided rules which invalidated pre-dispute agreements to arbitrate. *E.g., Standard Fire Insurance Co. v. Fraiman*, 514 S.W.2d 343, 344–45 (Tex.Civ. App.—Houston [14th Dist.] 1974, no writ). On the issue of value of loss, Texas appraisal awards are enforced by the courts and are dispositive on the issue unless there is proof of some circumstance (such as fraud) to justify setting aside the award. *See Providence Washington Insurance Co. v. Farmers Elevator Co.*, 141 S.W.2d 1024, 1026 (Tex.Civ.App.—Amarillo 1940, no writ); 46 Tex.Jur.3d *Insurance Contracts and Coverage* § 476 (1986).

We conclude that the insurance appraisal provision in this case was not an arbitration agreement. Therefore, the district court erred by reviewing the appraisal award under the FAA. This misapplication of the FAA harmed Hartford in at least three ways. First, Hartford was denied a jury trial on the validity of the award. Under Texas law, it appears that the validity of an appraisal award may be tried to a jury.[7] *See Pennsylvania Fire Insurance Co. v. W.T. Waggoner Estate*, 39 S.W.2d 593, 595 (Tex. Comm'n App.1931, judgment adopted); *Fisch v. Transcontinental Insurance Co.*, 356 S.W.2d 186, 191 (Tex.Civ. App.—Houston 1962, writ ref'd n.r.e.). Second, by reviewing the appraisal award under the FAA, the district court applied the wrong standards in assessing the validity of the award. Under the FAA, an award can be modified or vacated only if one of the circumstances enumerated in section 10 or 11 exists. *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980). Texas law has its own specific standards for vacating appraisal awards. *See Fisch*, 356 S.W.2d at 189–92; *Providence Washington Insurance Co. v. Farmers Elevator Co.*, 141 S.W.2d 1024, 1026 (Tex.Civ.App.—Amarillo 1940, no writ); *Continental Insurance Co. of New York v. Guerson*, 93 S.W.2d 591, 594 (Tex. Civ.App.—San Antonio 1936, writ dism'd). Third, the court's review of the appraisal under FAA standards led it to make certain factual findings that defeated Hartford's policy coverage defenses. On remand, those defenses may require a jury trial. As a federal court sitting in diversity, the district court should have reviewed the appraisal under Texas law, and its failure to do so requires that its judgment be reversed.

## III.

## CONCLUSION

Since the insurance appraisal conducted pursuant to the parties' policy in this case was not an arbitration, the district court erred by reviewing the appraisal award un-

In addressing the issue of whether a party has entered into an agreement to arbitrate under the Arbitration Act, courts are to apply general state law principles, giving due regard to the federal policy favoring arbitration.

*Recold, S.A. de C.V. v. Monfort of Colorado, Inc.,* 893 F.2d 195, 197 fn. 6 (8th Cir.1990).

7. Hartford made a timely demand for jury trial and paid the appropriate fee. *See* Fed.R.Civ.P. 38.

der the FAA.[8] Accordingly, the judgment of the district court is REVERSED, and this case is REMANDED to that court for further proceedings consistent with this opinion.

---

8. The parties raise several other issues in their briefs. Since the judgment of the district court is being reversed and remanded for the stated reasons, we do not reach these other issues.