TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00538-CV






Trudy's Texas Star, Inc., Appellant


v.


Weingarten Realty Investors, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. GN301352, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Trudy's Texas Star, Inc. and Weingarten Realty Investors dispute which of two
provisions in their lease agreement controls the determination of Trudy's rental payments for the
extension period of their lease of restaurant space. Trudy's contends that the arbitration provision
controls; Weingarten insists that the trial court properly ordered Trudy's to abide by the lease's
appraisal provision. For the reasons that follow, we affirm the trial court's summary judgment in
favor of Weingarten.


BACKGROUND


 In 1996, Trudy's leased restaurant space in the Brodie Oaks shopping center from
Austin Retail BOA I and II for an initial term of six years. Weingarten purchased the center and the
lease in 1998, becoming Trudy's' landlord. The lease provides that Trudy's would pay both a base
rent ("minimum guaranteed rental") and a percentage rent ("percentage rental") each month. Under
the lease, the base rent increased twice during the six-year term, once after three years, and again
after five years. (1) The percentage rent amounted to six percent of monthly gross sales (defined in the
lease) when they exceeded $200,000 (the "breakpoint").

 The lease also granted Trudy's an option to extend the term of the lease for one five-year period by giving Weingarten notice of such intent at least nine months before the expiration of
the initial six-year term: "Such extended term shall be upon all of the terms and conditions set forth
in this lease except that Minimum Guaranteed Rental shall equal the 'fair market rental value' of the
Premises as determined under Section 4.6 below." 

 Section 4.6 provides


If Tenant exercises its 60-month extension operation . . . and Landlord and Tenant
are not able to reach an agreement with respect to the fair market rental value of the
Premises within six (6) months prior to the commencement of such option period,
Landlord and Tenant shall each within fifteen (15) days thereafter, name a
professional appraiser who is a qualified, professional, licensed appraiser and shall
notify the other party in writing in accordance with the notice provision of this lease
of the name of such appraiser. If the two appraisers cannot agree on a fair market
rental value, the two appraisers thus appointed shall, by agreement between them
within forty-five (45) days of their appointment, appoint a third appraiser who shall
also be a qualified, professional, licensed appraiser, and the three appraisers shall
determine the fair market rental value of the Premises. By written communication
mailed or delivered on or before the date which is two (2) months prior to the
commencement of the sixty (60) month option period, the appraisers shall notify both
Landlord and Tenant of their findings. If the three appraisers are unable to agree
upon a valuation, the value agreed upon by any two of them shall be binding. If none
of the three appraisers thus selected are able to agree on the valuation by the date
which is two (2) months prior to the date of commencement of the option period,
then the average of the valuations of the two appraisers closest to each other shall be
binding. Landlord and Tenant shall each bear the cost of the appraiser appointed by
them and shall each pay for one-half (½) of the cost of the third appraiser.



 In mid-April 2002, Trudy's gave Weingarten notice that it was exercising its option
to extend the lease. By early October 2002, the parties had each engaged an appraiser under section
4.6 of the lease; (2) the two appraisals of fair market rental value were highly incompatible. Their
disagreement centered on whether a fair market rental value must take into account the additional
percentage rental based on gross sales. In an e-mail dated October 8, 2002, Weingarten's
representative wrote to Trudy's' counsel: "I believe before we go to the expense of hiring a third
appraiser, we need to confirm the ground rules for what we are trying to determine. In reviewing the
lease with our attorneys, I believe it is very clear that the only item subject to negotiation between
the appraisers is the Minimum Guaranteed Rental." It was Weingarten's position that a fair market
rental value could be calculated without regard to the percentage rental. Trudy's, which had proved
exceedingly successful in this location, wished to lower from six percent the percentage used to
calculate the percentage rental and to increase the breakpoint above $200,000 in gross sales. To urge
this adjustment it combined the base rent and percentage rent to calculate an overall rent per square
foot for bargaining purposes. Weingarten was willing to negotiate new rental terms but never agreed
to the percentage or breakpoint figures proposed by Trudy's. 

 Negotiations continued for several months, during which both Trudy's and
Weingarten proposed to invoke the appraisal process as a last resort if their negotiations proved
unsuccessful. In February 2003, Trudy's sent a letter to Weingarten indicating that it intended "to
pursue the hiring of a third appraiser to resolve this matter. [Trudy's] will speak with the appraiser
which Trudy's previously used and will provide third appraiser to you as soon as possible so that you
may consider the person and determine if he or she is acceptable to you." About a week later,
Trudy's decided instead to proceed to arbitration pursuant to section 30.2 of the lease agreement,
which provides that the parties shall submit "any dispute related to this lease" to binding arbitration. 
Trudy's sent Weingarten a formal demand for arbitration in mid-April. 

 Shortly thereafter, Trudy's filed a lawsuit seeking to compel arbitration due to the
parties' dispute over the "method of calculation and proper amount of rent to be paid." Weingarten
filed an answer and counterclaim, in which it sought a declaratory judgment that Trudy's must
comply with section 4.6 to determine fair market rental value. Weingarten then filed a motion for
summary judgment, arguing that the lease clearly expresses the intent of the parties to resolve their
dispute over base rent for the extension period through the specific appraisal process outlined in
section 4.6, rather than the general arbitration clause in section 30.2. The trial court granted the
motion, and Trudy's appeals that judgment.


DISCUSSION



 Trudy's first asserts that the trial court erred in declaring that section 4.6 of the lease
controls this dispute rather than ordering the parties to arbitration. Trudy's cites section 30.2 of the
lease, providing that the parties shall submit "any dispute related to this lease" to binding arbitration,
after unsuccessfully resolving it on their own or through mediation. Weingarten rejoins that section
4.6 controls, being more specific and indicating a clear intent by the parties to resolve the base-rent
issue by appraisals.

 The court's primary concern in construing a written contract is to ascertain the true
intentions of the parties as expressed in the instrument. National Union Fire Ins. v. CBI Indus., Inc.,
907 S.W.2d 517, 520 (Tex. 1995). We examine and consider the entire writing in an effort to
harmonize and to give effect to all the provisions of the contract so that none will be rendered
meaningless. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). No single provision will control;
rather, all provisions must be considered with reference to the whole instrument. Id. In the event
that two provisions of a contract arguably conflict, courts apply rules of construction to harmonize
the provisions. See Ogden v. Dickinson State Bank, 662 S.W.2d 330, 332 (Tex. 1983). A specific
provision controls over a general provision. See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132,
133-34 (Tex. 1994). 

 If a contract is unambiguous, its terms can be interpreted as a matter of law by the
court. Coker, 650 S.W.2d at 393. A contract is not ambiguous if it can be given a certain or definite
legal meaning or interpretation. Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861
(Tex. 2000). Only if contract language is subject to two or more reasonable interpretations is it
ambiguous, and whether a contract is ambiguous is a question of law for the court to decide by
looking at the agreement as a whole in light of the circumstances present when the contract was
entered. National Union, 907 S.W.2d at 520. Whether an agreement imposes a duty on the parties
to arbitrate a dispute is a matter of contract interpretation and is a question of law for the court. 
Tenet Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 388 (Tex. App.--Houston [14th Dist.] 1998, pet.
dism'd w.o.j.). 

 The lease provides for two separate and independent monthly payments: the base rent
and the percentage rent. The option to extend, which Trudy's could unilaterally exercise, specifies
that all the terms of the initial lease, which necessarily include the percentage-rental provision,
continue to apply during the extension period; the base rent is to be adjusted to equal the "fair market
rental value." Section 4.6 outlines an appraisal process to be used when Trudy's and Weingarten
"are not able to agree to fair market rental value." As evidenced by the parties' failed negotiations
and pleadings, they have not been able to reach an agreement as to fair market rental value. Section
4.6 reveals their intent to submit the issue of fair market rental value to appraisers to determine base
rent during the extension period. The lease language can be given a definite legal meaning and is
not reasonably susceptible to more than one meaning. See Coker, 650 S.W.2d at 393. It is,
therefore, not ambiguous concerning how the parties must resolve a dispute over "fair market rental
value"; they must follow the procedures in section 4.6 to hire two, and if necessary three, appraisers.
The appraisal provision in section 4.6--pertaining to a dispute as to fair market rental value--is
more specific than the general arbitration provision in section 30.2, which broadly covers "any
dispute." Pursuant to rules of contract construction, the more specific section 4.6 must control over
the more general section 30.2. See Forbau, 876 S.W.2d at 133-34. 

 Nonetheless, Trudy's urges that a broad arbitration clause purporting to cover all
disputes related to a contract creates a presumption in favor of arbitration and that any doubts as to
whether a dispute falls under its scope are to be resolved in favor of arbitration. See In re FirstMerit
Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). Although Trudy's correctly states the presumption in
favor of arbitration over resolution of disputes by the courts, the presumption does not necessarily
favor arbitration over other forms of alternative dispute resolution, especially when the parties have
intentionally chosen one alternative remedy for a specific dispute. The public policy favoring
arbitration indicates a concern with its function as an alternative to resolution of a dispute by the
courts: "In addition to alleviating some measure of the burden on the courts, arbitration in a
commercial context is a valuable tool which provides business people, and all citizens, with greater
flexibility, efficiency, and privacy." L.H. Lacy Co. v. City of Lubbock, 559 S.W.2d 348, 352 (Tex.
1977). This same public policy is advanced by the decision of parties to resolve their disputes
through means other than arbitration, such as the appraisal process chosen here; there is no reason
to blindly favor arbitration over another alternative form of dispute resolution specifically chosen
by the parties to resolve a particular kind of dispute. See Tex. Civ. Prac. & Rem. Code Ann.
§ 154.021 (West 1997) (court shall confer with parties to determine most appropriate alternative
dispute resolution procedure).

 The Texas Supreme Court has recently upheld the enforceability of appraisal clauses,
distinguishing them from arbitration clauses: "[W]hile arbitration determines the rights and
liabilities of the parties, appraisal merely 'binds the parties to have the extent or amount of the loss
determined in a particular way.'" In re Allstate County Mut. Ins. Co., 85 S.W.3d 193, 195 (Tex.
2002) (quoting Scottish Union & Nat'l Ins. Co. v. Clancy, 8 S.W. 630, 631 (Tex. 1888)); see also
Hartford Lloyd's Ins. Co. v. Teachworth, 898 F.2d 1058, 1061-62 (5th Cir. 1990) (both arbitration
and appraisal aim to submit dispute to third party for speedy and efficient resolution without recourse
to courts; however, they are significantly different procedures). Here, the appraisal provision in
section 4.6 binds the parties to have the fair market rental value determined in a particular way; it
does not deprive either party of its rights under the contract or determine liability. The Fort Worth
Court of Appeals granted a writ of mandamus to abate a lawsuit until the parties had complied with
the appraisal provision in their contract, likening the appraisal provision to an arbitration clause in
the sense that each compels enforcement upon a showing that the dispute falls within its scope. See
Vanguard Underwriters Ins. Co. v. Smith, 999 S.W.2d 448, 451 (Tex. App.--Fort Worth 1999, orig.
proceeding). Here, the dispute over fair market rental value falls squarely within the scope of the
appraisal provision, which thus must be enforced. We hold that the trial court properly ordered
Trudy's to abide by the appraisal process in section 4.6 and, therefore, overrule Trudy's first issue.

 Trudy's alternatively argues that by pursuing negotiations and not strictly adhering
to its timeliness, Weingarten waived its right to enforce section 4.6, or that at least there is a material
fact issue concerning its waiver. Waiver is the intentional relinquishment of a known right or
intentional conduct inconsistent with claiming that right. Jernigan v. Langley, 111 S.W.3d 153, 156
(Tex. 2003). "There can be no waiver of a right if the person sought to be charged with waiver says
or does nothing inconsistent with an intent to rely upon such right." Id. When the facts and
circumstances are undisputed or clearly established, as they are here, waiver is a question of law for
the court. See id. at 156-57. 

 The undisputed evidence shows repeated attempts by Weingarten to invoke the
appraisal process when other negotiations were faltering. Indeed, both parties had timely proceeded
through the initial steps outlined in section 4.6 by hiring appraisers who conducted appraisals and
communicated their conclusions to one another. (3) However, Weingarten and Trudy's were also in
the midst of protracted negotiations over new rental terms for the extension period. Weingarten did
nothing inconsistent with an intent to rely on the appraisal process as a last resort--in fact, it
repeatedly invoked the procedures when the negotiations seemed to break down. The delay in hiring
the third appraiser was due to the ongoing negotiations over rent, not to Weingarten's intentional
relinquishment of its right to invoke section 4.6, as evidenced by its recurring invitation to proceed
to hire the third appraiser. We hold that Weingarten did not waive its right to rely on section 4.6 and
overrule Trudy's second issue.

 Finally, Trudy's argues that the trial court granted more relief than Weingarten
requested in its motion for summary judgment. Weingarten's motion sought a declaration that
section 4.6 was the proper method for determining the fair market rental value. By granting such
declaration and decreeing that Trudy's "shall take nothing in its claims" against Weingarten, Trudy's
insists that the trial court implicitly granted judgment on the "definitional dispute" concerning the
term "fair market rental value." Because Weingarten did not submit this issue to the trial court for
determination in its summary-judgment motion, argues Trudy's, it was error for the court to deny
relief to Trudy's on an issue that was not before it on summary judgment. 

 Trudy's correctly cites Alder v. Laurel for the proposition that a trial court considering
a motion for summary judgment is restricted to the issues raised in the motion, the response, and
subsequent replies. 82 S.W.3d 372, 375-76 (Tex. App.--Austin 2002, no pet.) (citing Stiles v.
Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex. 1993)); see also Tex. R. Civ. P. 166a(c). Also, it
is error for a trial court to grant more relief than is sought. See Bandera Elec. Coop., Inc. v.
Gilchrist, 946 S.W.2d 336, 337 (Tex. 1997); Page v. Gellar, 941 S.W.2d 101, 102 (Tex. 1997). 
However, we cannot conclude that this trial court granted judgment on an issue not before it.

 In its petition, Trudy's asked the court to compel the parties to arbitration to resolve
their dispute over the fair market rental value. Weingarten, in response, sought a declaratory
judgment that section 4.6 of the lease, not section 30.2, controls the dispute and that Trudy's must
comply with that provision. Although the parties may dispute what "fair market rental value" means,
the trial court held that they have contracted for a way to resolve that dispute via the appraisal
process outlined in section 4.6. We overrule Trudy's third issue.


CONCLUSION


 Section 4.6 specifically governs this dispute concerning fair market rental value. To
determine the base rent for the extension period, Trudy's must follow the appraisal process set forth
in section 4.6 and may not compel arbitration under section 30.2. Weingarten did not waive its right
to enforce the appraisal provision, and the trial court did not grant more relief than Weingarten
requested. Therefore, we affirm the summary judgment in all respects. 



 __________________________________________

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: August 12, 2004
1. From months one through thirty-six, the base rent was $7,702.92; from months thirty-seven
to sixty, it was $8,442.08; and from months sixty-one to seventy-two, it was $8,942.08.
2. It is not clear from the record what communications transpired between April and October,
but based on their correspondence starting on October 8, we can conclude that each had already
engaged an appraiser, received an appraisal value, and communicated the value to the other.
3. According to the timeline in section 4.6, the parties were each to have appointed an
appraiser by about August 1, 2002, if they had not already agreed on a fair market rental value. By
about September 15, 2002, they were to appoint the third appraiser, if necessary. The first
correspondence in the record is dated October 8, 2002. It is an e-mail from Weingarten to Trudy's,
clarifying that only the base rent is subject to negotiation between the appraisers and stating that
Weingarten is willing to proceed to hire the third appraiser. The evidence indicates only that the
timeline for hiring the third appraiser was not followed. It also indicates the reason for the delay in
hiring the third appraiser: the protracted negotiations between the parties, purportedly to resolve the
issue of fair market rental value without having to incur the cost of a third appraiser.