

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00308-CV

**DEBRA DALTON, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF MARGARET COBB, APPELLANT**

**V.**

**REPUBLIC LLOYDS, APPELLEE**

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 22-6787-442, Honorable Tiffany Haertling, Presiding

November 29, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Debra Dalton, individually and as the Independent Administrator of the Estate of Margaret Cobb, appeals the trial court's partial summary judgments in favor of Republic Lloyds on her claims for breach of contract and extracontractual claims. She presents three issues. We reverse.[1]

---

[1] Because this matter was transferred from the Second Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

***Background***

The dispute arose from Republic's compliance with a homeowner's insurance policy it issued. After the initial named insureds, Margaret Cobb and her adult daughter Peggy Patton, passed away in their home in July 2018, there was a delay in discovering them. That led to "a significant biohazard event" within the home, apparently caused by their decomposing bodies. No one denies that the policy covered the event. Appellant, Debra Dalton, was the decedents' daughter and sister, respectively. So too was she designated the independent administrator of Cobb's estate. Assets of the estate included the home in which Cobb died.

Shortly after being notified of the claim, Republic provided Dalton a list of approved service providers, from which list Dalton chose ServPro. That resulted in her contracting with the entity to remediate the property. ServPro informed Dalton that the remediation services had been approved by Republic and began work. Significant removal or remediation efforts were undertaken. During same, the relationship between the insurer and Dalton deteriorated. Ultimately, Dalton invoked the mandatory appraisal clause of the insurance policy.

Both parties chose their respective appraisers, who did not select an umpire. Instead, the appraisers apparently agreed on the loss and an award of $93,038.85. After subtracting the deductible, the actual cash value of the appraisal award fell to $91,352.85. By that time, Republic had already paid more than the award and refused to pay more.

Dalton sued Republic and ServPro, alleging both breach of contract and extracontractual claims against Republic. Republic then filed its two traditional motions for summary judgment. The trial court granted them, dismissed her claims against

Republic with prejudice, and severed and finalized the dismissed claims from those remaining against Servpro.  This appeal ensued.

### *Standard of Review*

The applicable standard of review regarding a traditional motion for summary judgment is well-settled and discussed in *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680–81 (Tex. 2017).  We utilize it here while noting that it places the burden on the movant to prove entitlement to summary judgment as a matter of law.  *See id.* at 681.  The nonmovant need not proffer any evidence creating issues of fact until that burden is carried.

### *First Issue: Breached Contract*

Dalton initially contends that "[t]he trial court erred by granting summary judgment on her cause of action for breach of contract because the appraisal award did not preclude the trial court's determination of the scope of the award and summary judgment evidence created a fact issue as to scope."  We sustain the issue.

Supporting her position, she cites *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009), and its language characterizing damage questions as within the purview of the appraisers, while liability questions remain for disposition by the court.  *Johnson*'s holding, however, is inapposite here.  Republic did not contest liability under the policy.  Dispute involved the valuation of the loss, i.e., damage.  Indeed, she contended that Republic breached the insurance contract by its "failure and refusal to pay Plaintiff adequate compensation for her losses."  Yet, despite rejecting her reliance on *Johnson*, our task continues.  This is so because Republic sought summary judgment on the ground that the appraisal award barred a claimed breach of contract, and Dalton questioned the validity of the award.

3

As we have observed, the "effect of an appraisal award is to estop one party . . . from contesting the issue of damages, in a suit on the insurance contract, leaving only the question of liability." *Hall v. Germania Farm Mut. Ins. Ass'n*, No. 07-16-00304-CV, 2017 Tex. App. LEXIS 9654, at *7 (Tex. App.—Amarillo Oct. 13, 2017, no pet.) (mem. op.); *accord Stewart v. Tex. Farmers Ins. Co.*, No. 02-23-00041-CV, 2023 Tex. App. LEXIS 7485, at *6 (Tex. App.—Fort Worth Sept. 28, 2023, no pet.) (mem. op.) (stating the same). So, when, the insurer pays the full amount of that award, the insurer cannot be sued for purportedly failing to pay the amount of loss. *Tippett v. Safeco Ins. Co. of Ind.*, No. 02-19-00152-CV, 2020 Tex. App. LEXIS 1453, at *12 (Tex. App.—Fort Worth Feb. 20, 2020, no pet.) (mem. op.).

Here, Dalton invoked the appraisal process. It resulted in an appraisal award amounting to less than the monies Republic already paid. In short, the procedure and award she contractually instigated and to which she was contractually bound resulted in her receiving more than the award. Thus, her claim against the insurer for failing and refusing "to pay . . . adequate compensation for her losses" would seem to be barred by estoppel. As alluded to earlier, Dalton argued that a question of fact existed regarding the appraisal's validity. She believed the award arose from mistake and should be vacated.[2] We agree.

Mistake applies when the award fails to speak what the appraisers intended. *Abdalla v. Farmers Ins. Exch.*, No. 07-17-00020-CV, 2018 Tex. App. LEXIS 3358, at *3 (Tex. App.—Amarillo May 14, 2018, no pet.) (mem. op.); *Garcia v. State Farm Lloyds*,

---

[2] Dalton raised mistake and "setting aside" the appraisal when responding to Republic's motion of partial summary judgment. *See Stewart*, 2023 Tex. App. LEXIS 7485, at *7 (stating that the court would not reverse summary judgment on a ground for setting aside the appraisal award unless the nonmovant raised it in response to the motion and the evidence raises a fact issue as to it).

4

514 S.W.3d 257, 269 (Tex. App.—San Antonio 2016, pet. denied). That is, evidence must illustrate that the appraisers were operating under a mistake of fact which resulted in an unintended award. *See Abdalla*, 2018 Tex. App. LEXIS 3358, at *3; *Providence Wash. Ins. Co. v. Farmers Elevator Co.*, 141 S.W.2d 1024, 1026–27 (Tex. Civ. App.—Amarillo 1940, no writ); *accord Garcia*, 514 S.W.3d at 269 (explaining mistake as one that caused an award to operate in a way the appraisers did not intend).

Of the two appraisers, one omitted items of loss from his equation, as evinced by the summary judgment record. He attested that his loss calculations failed to include remediation efforts performed before his inspection of the home. By then, substantial amounts of sheetrock and other material had been removed and costs related thereto had been incurred. Ceiling rafters were left exposed, as were frames within walls. His measure only reflected loss (cost) of restoring the demolished interior to its condition before the covered event. It did not include the cost of demolishing it, or so evidence indicates.

Dalton made "demand for appraisal of the amount of loss pursuant to the Policy." One can reasonably interpret a request to appraise "the amount of loss" as the loss beginning from the point that the covered event occurred, i.e., eventual discovery of the decomposing bodies and their effect. Logically, one necessary aspect of that measure would include the removal of materials that could not be salvaged in preparation for restoring the property. At least one appraiser (i.e., Dalton's selection) did not take that aspect into consideration. Nor did he view the award as covering that aspect.[3]

---

[3] As said in part via his affidavit: "When I signed [the appraisal], I did not believe that the language which stated 'this award is made without consideration for any prior partial payments or deductible(s). Prior payments, if any, will be subtracted from the gross award amount listed above' referred to the prior payments for the prior remediation, biohazard clean up, or removal of materials from the house before December 11, 2020."

5

Construing this evidence in a light most favorable to Dalton and indulging in reasonable inferences favoring her, we conclude that a factfinder could reasonably infer that the appraiser misinterpreted the scope of his task. If, as suggested by Republic, the intent was to appraise the entire loss, the award was not as intended given the evidence from one appraiser; at the very least, the evidence raised a material issue of fact on the matter.

Republic attempts to neutralize the effect of the evidence we discussed by arguing that both appraisers had to have operated under a mistaken intention. It derives this assumption by describing the test as referring to the "appraisers'," plural, intent. Appraisers being plural, the mistake of one would not be enough, or so its argument goes. We reject the contention for several reasons.

First, it takes two to tango. As said earlier, mistake applies when the award fails to speak what the appraisers intended. If one of the two appraisers did not so intend, then the appraisers (plural) cannot be said to so have intended. Both had to agree that the award was what they intended. One thinking it covered the entire loss while the other thought it covered only a portion falls short of illustrating that both intended it to cover the entire loss.[4] Dancing with oneself may be acceptable to Billy Idol,[5] but two appraisers needed to tango together to have a viable award.

In other words, the policy required "[t]he appraisers [to] separately set the amount of loss." If they were to "submit a written report of an agreement to us, the amount agreed upon will be the amount of loss." If they failed to so agree, then their differences would be submitted to an umpire. "A decision agreed to by any two will set the amount of loss,"

---

[4] We do not address what the effect would have been if the two appraisers operating under different mindsets had selected an umpire per policy terms.

[5] BILLY IDOL, *Dancing with Myself*, *on* DON'T STOP (Chrysalis 1981).

under that situation. If nothing else, this language illustrates that at least two votes approving the same award were needed. One of the two appraisers operating under a potential mistake, then those two votes were not secured, or at least an issue of fact arose regarding the matter.

Second, the evidence, when viewed in a light favorable to Dalton, may also be interpreted as satisfying Republic's premise. Again, one may reasonably interpret Dalton's request as demanding an appraisal of loss from start to finish, not from mid-restoration to finish. Had that been the intent of Republic's appraiser, evidence creates an issue of fact as to whether he omitted aspects of the task from his calculations as well. Dalton's appraiser saying that the $93,000 award both arrived at did not include costs of demolition can be interpreted as evidence indicating Republic's appraiser was also mistakenly appraising partial, as opposed to total, loss. They may have intended the award to cover everything when it did not.

To reiterate, Republic offered one ground in its summary judgment when attacking the allegation that it failed and refused to pay the loss arising from remediating the premises. That ground was based upon the existence of a valid appraisal, and we addressed it above. However, Dalton alleged two other ways Republic purportedly breached the contract, which modes were unrelated to remediation expenses. We address them now.

The first relates to her claims for damages reflecting the lost rental value of the property. The contractual provision upon which she relied states:

2. Fair Rental Value

If a loss covered under Section I makes that part of the residence premises rented to others or held for rental by you not fit to live in, we cover the fair

7

> rental value of such premises less any expenses that do not continue while it is not fit to live in.
>
> Payment will be for the shortest time required to repair or replace such premises.

Because she allegedly could have rented the house had Republic timely covered its repair, she deemed the insurer responsible for lost rentals. Arriving at that conclusion requires misinterpretation of the policy, however. The passage referring to "a loss covered under Section I [making] that part of the residence premises rented to others or held for rental by you not [being] fit to live in" denotes rental or effort to rent at time of loss. In other words, the loss incurred must make unfit the part of the residence then being rented or held out for rent. The house in question here was not being rented or held out for rent when its owners died. So, we cannot say the trial court erred in granting summary judgment on this claim.

The second relates to Dalton's attempt at recovering under the policy for loss of personalty. The trial court granted summary judgment denying it, as well. However, Dalton failed to complain of that on appeal. So, that aspect of the summary judgment remains effective.

### *Second Issue: Extracontractual Claims*

In addition to her cause of action for breach of contract, Dalton also sought recovery for alleged violations of Chapter 541 of the Texas Insurance Code, the Deceptive Trade Practices Act (DTPA), and the common law duty of good faith and fair dealing. Republic sought to deny it in three ways. Those arguments consisted of 1) no standing since she was not an "insured," 2) the non-survivability to the claims, and 3) the absence of independent injury. We address each.

8

As for standing, the insurance policy stated that upon the death of the named insured, Republic "insure[s] the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death." Furthermore, the term "insured" included "the person having proper temporary custody of the property until appointment and qualification of a legal representative." Some summary judgment evidence revealed that Dalton fell within those categories. Indeed, a court of competent jurisdiction appointed her independent administrator of her mother's estate. Thus, at the very least, a question of fact existed on the topic of her standing to pursue the extracontractual claims.

As for survivability, the claims purportedly expired upon the death of the insured. In making this argument, Republic presumes that the insured were simply Margaret Cobb and Peggy Patton, the two individuals who died in the home. As described in the immediately preceding paragraph, however, a material question of fact exists as to whether Dalton was also an insured per policy terms. That circumstance was missing in *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605 (Tex. App.—San Antonio 1996, no pet.); *Estate of Vasquez-Ortiz v. De Seguros*, No. H-11-2413, 2013 U.S. Dist. LEXIS 2574 (S.D. Tex. January 8, 2013) (mem. op.); and the other cases cited by Republic. Thus, those cases are inapposite. Nor can we forget that Dalton, if an insured, was the one who dealt with restoring the premises and Republic. She was the one to experience the alleged injury emanating from the insurer's conduct, not the decedents. So, any purported extracontractual claims being pursued accrued on her watch as a potential insured. Republic has not cited us to authority indicating such an insured lacks standing to pursue extracontractual claims simply because earlier insureds died.

9

As for the argument that extracontractual claims are unavailable due to the absence of independent injury, we note that Republic moved for a traditional summary judgment. That meant it had the burden to prove, as a matter of law, the absence of injury independent of the claimed breach. Through its motion, though, the insurer simply contended that Dalton neither pleaded nor proffered evidence of an independent injury. The same theory was uttered in its appellee's brief. Nevertheless, until Republic carried the burden imposed on it when moving for a traditional motion for summary judgment, Dalton's purported failure to raise a material issue of fact regarding the topic mattered not. And, Republic cited us to no evidence disproving, as a matter of law, the absence of an independent injury.

As to the possibility that Republic's argument can be interpreted as also suggesting that the absence of a breach of contract precluded extracontractual damages, it remains to be seen whether a breach occurred. Our resolution of the first issue left open the matter.

In short, we find material issues of fact that precluded the entry of summary judgments denying all claims of Dalton. To the extent one of the partial summary judgments dismissed her claims for lost rentals and recovery for loss to personal property under the policy, it is affirmed. In all other respects, both are reversed. The cause is remanded to the trial court.


Brian Quinn
Chief Justice


10